569 A.2d 920

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Alfonso Robbins AFRICA, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 23, 1989.

Decided Feb. 2, 1990.

John W. Packel, Philadelphia, Chief, Appeals Div., Stuart B. Lev, for appellant.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, Philadelphia, Chief, Appeals Div., Norman Gross, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This case requires us once again to clarify our laws governing the right to a speedy trial in Pennsylvania.

Appellant was arrested on June 10, 1984, following a violent confrontation with the Philadelphia police. A criminal complaint was filed on the following day. Trial by jury before Judge Temin began on September 15, 1986, and Appellant was found guilty of simple assault and sentenced to a term of twenty-four months probation to run concurrently with another sentence already being served in prison. A total of twenty-seven months elapsed between the arrest and trial.

The facts are that a police officer stopped Appellant's vehicle for a traffic violation. An argument ensued, and Appellant struck the officer with an iron bar. Appellant has maintained that he was motivated to defend himself against an officer who was drawing his gun from its holster. Appellant also claims that his fears were well-founded because, as a member of the famous MOVE organization, he allegedly had suffered from police action in the past.

The procedural history of this case indicates the following:

1) The complaint was filed on June 11, 1984.

2) The mechanical rundate was December 7, 1984.

3) At arraignment on July 3, 1984, the case was assigned to Judge Lois G. Forer under the Individual Judge Calendar Program and a pre-trial conference was scheduled for July 17, 1984.

4) At the pre-trial conference on July 17, 1984, the case was continued to the earliest possible date for trial, October 29, 1984.

5) On October 29, 1984, Judge Forer was engaged in a jury trial in another case and this case was continued to the earliest possible date, January 30, 1985.

6) On November 15, 1984, the Commonwealth filed a timely petition to extend the time for trial under Rule 1100.

7) On January 28, 1985, two days before the next scheduled trial date, Judge Forer held a conference at which the defendant was not present. At that time, the case was continued to May 23, 1985.

8) On May 23, 1985, Judge Forer was on trial in another matter and this case was continued to the earliest possible date consistent with the court's calendar, July 31, 1985.

9) On July 31, 1985, Judge Forer was again on trial in another matter and this case was continued to the earliest possible date before Judge Joseph T. Murphy, November 6, 1985.

10) On November 6, 1985, Judge Murphy was engaged in the trial of another matter. The case was then continued from day to day until November 12, 1985, when it was transferred to the docket of Judge Nelson Diaz and listed for the earliest possible date for a pre-trial conference, November 20, 1985.

11) On that date, the case was continued to the earliest possible date for trial, June 9, 1986.

12) Judge Diaz was subsequently transferred to the Civil Division and his docket was transferred to Judge Temin. June 9, 1986 remained the earliest possible date for trial.

13) On June 2, 1986, a special pre-trial conference was held for the purpose of rescheduling this case because the court's vacation would prevent trial of the case on June 9, 1986. At that time the case was continued to the earliest possible date, September 15, 1986. On that date, the case proceeded to trial.

14) At all times relevant to this issue, Africa was acting as his own counsel and the Defender Association was advisory counsel.

■ Speedy trial in Pennsylvania is mandated by Article I, Section 9 of our Constitution and applicable federal law which we have incorporated into our jurisprudence.[1] Where judicial delay is at issue, as in the present case, we insist also that:

> Henceforth, the trial court may grant an extension under rule 1100(c) only upon a record showing: (1) the "due diligence" of the prosecution, and (2) certification that trial is scheduled for the earliest date consistent with the court's business; provided that if the delay is due to the court's inability to try the defendant within the prescribed period, the record must also show the causes of the court delay and the reasons why the delay cannot be avoided. *Commonwealth v. Mayfield*, 469 Pa. 214, 222, 364 A.2d 1345, 1349–50 (1976).

---

1. In *Commonwealth v. Hailey*, 470 Pa. 488, 494, 495, 368 A.2d 1261, 1264 (1977), we concluded:
   There can be no question that in this Commonwealth after the United States Supreme Court's decision in *Klopfer v. State of North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), the federal and state speedy trial protections were considered as being co-extensive and that a claimed violation of either or both would be assessed based upon the *Barker v. Wingo, supra* [407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)] formulation. Although our decision in *Commonwealth v. Hamilton, supra* [449 Pa. 297, 297 A.2d 127 (1972)] indicated our intention of promulgating a presumptive rule for this jurisdiction, that did not in fact come to pass until the adoption of Rule 1100. In *Hamilton, supra*, although we discussed the advisability of providing additional protection to those accused of crime in this Commonwealth, we nonetheless considered the claim therein presented in view of the *Barker v. Wingo, supra* test.

▮▮▮ In analyzing alleged violations of the rule, we engage in a two-step analysis. We must decide at the outset whether the delay itself was sufficiently long to be "presumptively prejudicial." *Commonwealth v. Reinhart,* 466 Pa. 591, 353 A.2d 848 (1976). If the delay is determined to be presumptively prejudicial, the court then is required to employ the balancing test set forth in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which considers four factors: the length of the delay; the reason for the delay; the defendant's assertion of the right to a speedy trial; and any prejudice to the defendant arising from the delay. *Jones v. Commonwealth,* 495 Pa. 490, 434 A.2d 1197 (1981); *Commonwealth v. Myers,* 472 Pa. 200, 371 A.2d 1279 (1977); *Commonwealth v. Hamilton,* 449 Pa. 297, 297 A.2d 127 (1972). The length of the delay, of course, is the "triggering mechanism," *Commonwealth v. Williams,* 457 Pa. 502, 506–507, 327 A.2d 15, 17 (1974), and "when a delay is so extensive that a court considers it presumptively prejudicial, inquiry into the three other factors is necessary." *Hailey,* 368 A.2d at 1266. In deciding whether a violation has occurred, we further analyze the circumstances of each case within the context of a consideration of the rights of society as well as those of the accused to be protected from undue and oppressive pre-trial imprisonment. *Commonwealth v. Simms,* 509 Pa. 11, 500 A.2d 801 (1985); *Commonwealth v. Pearson,* 450 Pa. 467, 303 A.2d 481 (1973).

▮▮▮ A delay of twenty-seven months in this case is sufficient to trigger the inquiry under Pennsylvania law. *Commonwealth v. Pounds,* 490 Pa. 621, 628, 417 A.2d 597, 600 (1980) (a delay of almost two years precipitated further inquiry). Our next step, therefore, turns to an examination of the remaining factors to be weighed sensitively on the facts of the case.

At the time of Appellant's arrest and trial, cases were assigned in the Philadelphia court system on the basis of an Individual Judge Calendar System. The effect of this procedure was to impose a serious restriction upon the trans-

ferability of cases to less crowded trial dockets. As explained by Judge Temin: "Under the Individual Judge Calendar System, cases are not transferred from one judge to another merely because of a crowded docket except under unusual circumstances, none of which were operative here." (N.T., September 16, 1986, p. 245.) The assignment system was elaborated further by the practice of assigning certain cases to judges in a designated "major felony program" or waiting for a lengthy opening to appear in the calendar in order to provide for the trial of cases suspected of being potentially "protracted."[2] Appellant's trial, in fact, did fulfill such predictions by lasting twelve days.

Whatever the merits of that past system, we are concerned presently with balancing the equities to determine whether judicial procedure was exercised with due diligence in bringing the case to trial or whether Rule 1100 was violated. While noting that the prosecution sought to "get the case moving" by listing it for trial,[3] the record demonstrates that the judicial process diverted Appellant from one date to another without much regard for the need to conduct a speedy trial.

We focus in this regard on the fact that each transfer moved the case to the bottom of the list of the next judge. This first happened here while it was on Judge Forer's list. Because local practice did not provide for any schedule adjustments in order to account for the age of the case, the next "available" date was the open date following completion of that judge's trial list. In this fashion, the case was continued to the "earliest possible" date consistent with the court calendar.

The Commonwealth urges us herein to sanction that procedure. Additionally, the Commonwealth seeks to bol-

---

**2.** Testimony of Joseph Cairone, Deputy Court Administrator for the Court of Common Pleas, (N.T., September 15, 1986, p. 35), and Assistant District Attorney Garold Tennis, at *id.,* pp. 24–25.

**3.** Assistant District Attorney Garold Tennis testified that he had a "number of conversations" with the office of the President Judge in an effort to transfer the case quickly to a judge who was able to hear "protracted matters." (N.T., September 15, 1986, pp. 24–25).

ster its defense with arguments that the case was transferred from Judge Forer to Judge Murphy because the former had trial duties and soon was to be transferred to the civil side; from Judge Murphy because he was limited as a Senior Judge in the number of cases he would hear; and from Judge Diaz because he also was being transferred to civil trial duties; until finally, Judge Temin heard the case. Each delay has been justified on the ground that it was being rescheduled at the next "earliest date." Considering these facts, Judge Temin ruled that:

> Under the cases defining Rule 1100 where the Commonwealth has not been at fault and has been duly diligent in bringing the defendant to trial, the Commonwealth is entitled to an extension, although there is an exception, and that would be *Commonwealth versus Mayfield.* And we find by *Commonwealth versus Crowley,* for a court delay that is not occasioned by the Commonwealth, there has been insufficient proof before me in this case that the Philadelphia Common Pleas Court in listing this matter have not complied with the requirements as of proper court administration as delineated in *Commonwealth versus Crowley.*

> For that reason the Rule 1100 Motion is denied and the petition to extend is granted to today's date.

(N.T., September 16, 1986, p. 248.)

We agree that the prosecution acted with due diligence. We disagree, however, that court delays were warranted under our law on this subject.

The governing case is, indeed, *Commonwealth v. Crowley,* 502 Pa. 393, 466 A.2d 1009 (1983), whose operative language is as follows:

> Rule 1100 should not be construed to require Common Pleas Courts with backlogged criminal dockets to devote all their administrative and judicial resources to guarantee that every defendant is tried within the period prescribed by the Rule. It should be sufficient for the court to establish that it has devoted a reasonable amount of its resources to the criminal docket and that it scheduled the

criminal trial at the earliest possible date consistent with the court's business. While the trial court may be required to rearrange its docket, if possible, when judicial delay has caused a lengthy postponement beyond the period prescribed by Rule 1100, or one that implicates the constitutional right to a speedy trial, it should not be required to do so to avoid a delay of under 30 days as here.

502 Pa. at 402–403, 466 A.2d 1009 (citations omitted).

In *Crowley* we established a two-part test. On the one hand, where the delay appears minimal, as in thirty days in *Crowley*, a court is not required to engage in unreasonable reshuffling of its docket to meet Rule 1100 deadlines. *Crowley*, nevertheless, particularly envisions another circumstance where the delay is so egregious that a constitutional right has been impaired, in which case the court cannot be excused for postponing the defendant's trial. Although we continue to eschew a "stopwatch approach," see *Commonwealth v. Terfinko*, 504 Pa. 385, 474 A.2d 275 (1984), the mere existence of a back-logged criminal docket is not to be construed as an automatic cure of all judicial delays. It is legally impermissible to mobilize the procedural powers of the judiciary for the purpose of playing musical chairs with defendants to a tune entitled "earliest possible date consistent with the court's business." The court's business is to dispense justice in a speedy manner in accordance with constitutional mandates.

Reasonableness under the circumstances, furthermore, means that the burden is on the Commonwealth to prove by a preponderance of the evidence that the accused was brought to trial with due diligence. We expect that such an effort shall be made in good faith. Successive shifting of the Appellant to the bottom of the next trial list does not establish a good faith reason for the delay, and thereby constitutes a failure of one of *Barker* tests which we employ as the standard of review under Article I, Section 9 of our State Constitution. *Commonwealth v. Hamilton*, 449 Pa. 297, 301, 297 A.2d 127 (1972).

As to the second test, in asserting his right to a speedy trial, we take note of Judge Temin's opinion that following Appellant's request for information, he subsequently filed Petitions to Dismiss under the speedy trial provisions of Rule 1100 and the Federal Constitution. (N.T., September 16, 1986, p. 247). More to the point, Judge Temin concluded: "I also find that the defendant never waived his Rule 1100 rights." (*Id.*, at 245). In this respect, the delays appear to be "the indefinite postponement of a trial over the objection of the accused." *Commonwealth v. Leaming*, 442 Pa. 223, 227, 275 A.2d 43, 45 (1971).

The remaining issue to be weighed on the Barker scale is whether Appellant was prejudiced by the delay. Appellant argues that his defense was impaired by the deaths of two witnesses in the famous MOVE conflagration which occurred while he was awaiting trial on these charges.[4] These witnesses were present and able to testify regarding whether the officer was drawing his gun.

Appellant insists that the two deceased witnesses were critical to his defense. His chief argument is that he hit the police officer with the iron bar only after he observed the officer drawing his gun from its holster, and that he was defending himself against harm. The injured police officer, however, testified to the contrary that his weapon always remained in its holster:

Q. Now, when you are on duty you always carry your gun in its holster, do you not?

A. Yes, ma'am.

Q. And on that occasion, focusing on the moment you saw Mr. Africa leave the tow truck, you had your gun, did you not?

A. I always have my gun. It's in the holster.

Q. Isn't it true that you removed the gun from the holster when you saw he was a MOVE member?

---

4. Appellant argues also that he was prejudiced by having been frustrated in efforts to obtain a concurrent sentence and by suffering emotional distress. The allegations are meritless. The sentence was concurrent and there was no evidence of the latter.

A. Incorrect, ma'am. I backed up and looked over my shoulder.

Q. Why did you look over your shoulder?

A. I was looking for the civil affairs team was supposed to be on the corner, because I wasn't supposed to have any contact with MOVE members.

\* \* \* \* \* \*

Q. And then you felt yourself being hit; is that true?

A. Yes, ma'am.

Q. Where was your gun at the point at which you felt yourself being hit?

A. In my holster.

\* \* \* \* \* \*

Q. At the time you felt yourself hit, didn't you reach for your gun?

A. No, ma'am, I reached for the tire iron.

(N.T., September 16, 1986, pp. 24–28). The officer, in short, insisted that his weapon was not being drawn.

Ironically, it was Commonwealth testimony at trial which supported Appellant's version of events. A statement to the police to this effect by an anonymous source was read into the record. In addition, Commonwealth witness, Jurle Willis, testified that the officer was in the process of drawing his gun:

Q. Had the police officer pulled out his gun with the defendant hitting him with the crowbar?

A. He was about to.

Q. When you say he was about to, what was he doing?

A. Going for his gun.

\* \* \* \* \* \*

Q. You did see him with the gun all the way out; isn't that right?

A. No.

Q. You said you did see the cop draw his gun; is that right?

A. Yes, he was going to.

Q. And you saw him pulling his gun out of his holster; is that right?

A. Yes.

*  *  *  *  *  *

Q. Before I hit him; is that right?

A. Yes.

(N.T., September 26, 1986, pp. 1357–1361).

On this record, Judge Temin concluded in her written opinion that Appellant's two deceased witnesses would have offered cumulative evidence only.[5] His inability to call them, therefore, did not prejudice his defense:

> Africa claims that he was prejudiced because two alleged eyewitnesses who would have offered testimony favorable to the defendant were killed in a fire at the MOVE house in Philadelphia on May 13, 1986. The claim must be assessed retrospectively in light of what occurred at trial. *United States v. McDonald* [MacDonald], 435 U.S. 850, 56 L.Ed.2d 18, 98 S.Ct. 1547 (1978). At trial, Africa testified in his own defense and his testimony was supported by the testimony of the Commonwealth's witness Jurle Willis (N.T. September 16, 1986, pp. 1354–1361). It is apparent from the verdict that the jury believed this version of the facts which supported a conviction of simple assault only. Thus the testimony of the two witnesses would have been merely cumulative. Africa suffered no prejudice from his inability to call them at trial. (Opinion, pp. 8–9).

Whether to exclude repetitive testimony is a matter within the discretion of the trial court. *Commonwealth v. Simmons*, 482 Pa. 496, 510, 394 A.2d 431, 438 (1978); *Commonwealth v. Bailey*, 450 Pa. 201, 299 A.2d 298 (1973). Cumulative evidence is excluded most frequently where character is at issue. Here, the central problem is a factual dispute: whether the officer was in the process of using his

---

5. The Superior Court affirmed in a terse memorandum opinion based on the trial court's decision.

weapon. The posture of relevant testimony pitted the factual statement of the officer against that of Appellant's which, in turn, was affirmed by Commonwealth evidence brought out on cross-examination. Under these circumstances, Appellant should have been given an opportunity in his own case to put in corrobative evidence. An accused has a fundamental right to present his own defensive relevant evidence. *Commonwealth v. Greene,* 469 Pa. 399, 366 A.2d 234 (1976). A denial of this opportunity constitutes a violation of his right to a fair trial under both the State and Federal Constitutions. *Commonwealth v. Scott,* 496 Pa. 78, 436 A.2d 161 (1981); *Commonwealth v. Walzack,* 468 Pa. 210, 360 A.2d 914 (1976); and *Commonwealth v. Graves,* 461 Pa. 118, 334 A.2d 661 (1975). Here the testimony of the two deceased witnesses would have been offered to bolster his rendition of the facts from that side of the trial. Then subjected to the great truth-finding engine of cross-examination, the resulting testimony would have been balanced by the jury against that of the officer. The jury would have been entitled to hear the evidence in determining their verdict. They could have decided that the Appellant was not guilty of any crime.

In balancing the equities of the *Barker* test, we hold that the legal process evaded strictures of Rule 1100, and pursuant to subsection (g), we order the dismissal of the charge and the discharge of the defendant on this count.

LARSEN and McDERMOTT, JJ., dissent.