577 A.2d 595

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Richard Edgar WAMSHER, JR., Appellee.**

Superior Court of Pennsylvania.

Submitted Nov. 27, 1989.

Filed June 26, 1990.

Charles M. Guthrie, Jr., Asst. Dist. Atty., Reading, for the Com., appellant.

James M. Bucci, Reading, for appellee.

Before ROWLEY, KELLY and MONTGOMERY, JJ.

KELLY, Judge:

The Commonwealth appeals from an order dismissing burglary charges against appellee, Richard Edgar Wamsher, based upon the trial court's determination that the Commonwealth had failed to exercise "due diligence" in bringing appellee to trial within 120 days of the withdrawal of appellee's guilty plea, as required under the former version of Pa.R.Crim.P. 1100. We find that the run date under the new version of Rule 1100 was applicable in this case, and that it had not yet expired. We find alternatively that the Commonwealth had acted with "due diligence." Consequently, we reverse.

*Facts and Procedural History*

Appellee was charged by complaint with burglary and related offenses on April 26, 1987. Appellee consented by stipulation and an express waiver of Rule 1100 rights to an extension of the original Rule 1100 date to February 12, 1988. On December 15, 1987, appellee offered a guilty plea which was conditionally accepted. At sentencing on December 18, 1987, upon review of the file and following objection to the plea bargain by the victim of the offense, the trial court permitted appellee to withdraw his plea.

On April 15, 1988, the Commonwealth filed a petition for an extension of the Rule 1100 run date, asserting the

unavailability of the defendant, the unavailability of the defense counsel, and judicial delay. The petition was denied following a hearing on April 27, 1988. Charges pending against appellee were dismissed with prejudice, and this timely appeal followed.

On appeal, the Commonwealth contends that the trial court erred in failing to apply our Supreme Court's amendments to Rule 1100 in this case, as the run date under the former version of Rule 1100 had not expired when the amendments became effective. The Commonwealth also contends that it acted with due diligence in bringing this case to trial.

Appellee responds that when his case was called for trial on April 24, 1988, 130 days had passed since his plea had been withdrawn, and 366 days had past since the original complaint was filed. Appellee argues that the 120 day period under the former rule controls this case; or alternatively, if the new rule applies, its 365 day period runs from the date of the filing of the complaint, and not the date of the withdrawal of appellee's guilty plea. Appellee concludes that in either case discharge was required.

The trial court, in its Pa.R.A.P. 1925(a) opinion, reasoned that the former version of Rule 1100 controlled this case, notwithstanding the amendment of the Rule 1100 by our Supreme Court on December 31, 1987. The trial court further explained that review of its own docket (which the court and not the prosecutor controlled) supported a conclusion that the prosecution had not acted with due diligence in bringing appellee to trial. The trial court did not elaborate as to how its docket revealed the Commonwealth's lack of due diligence, nor did the trial court indicate that the Commonwealth had failed to appear ready to try this case on any date for trial scheduled by the trial court.

### Application of Amended Rule 1100

Appellee was arrested and charged on April 25, 1987. He was thereafter released on bail and remained at liberty on bail at all relevant times.

■ On November 24, 1987, the trial court granted an extension of the Rule 1100 run date to February 22, 1988, based upon the stipulation of the parties and an express written waiver of Rule 1100 rights signed by appellee. On December 15, 1987, appellee entered a guilty plea. Appellee's plea, though conditional, nonetheless satisfied the Rule 1100 requirement, as it occurred before the extended run date of February 22, 1988, and placed appellee on trial within the meaning of the constitutional speedy trial requirement and Rule 1100. *Commonwealth v. Whittall*, 304 Pa.Super. 258, 262, 450 A.2d 669, 671–72 (1982); *Commonwealth v. Lewis*, 295 Pa.Super. 61, 67, 440 A.2d 1223, 1226 (1982) (*en banc*).

■ On December 18, 1987, however, the trial court permitted appellee to withdraw his plea. Under the version of Rule 1100 then in effect, the withdraw of the plea was treated as the grant of a new trial, and triggered a new 120 day period within which to again bring appellee to trial. *See Commonwealth v. Hollenbach*, 375 Pa.Super. 281, 290 n. 3, 544 A.2d 471, 476 n. 3 (1988); *Commonwealth v. Jensch*, 322 Pa.Super. 304, 310, 469 A.2d 632, 636 (1983); *Commonwealth v. Whittal, supra*, 437 A.2d at 671–72; Pa.R.Crim.P. 1100(e)(1) & note (effective December 9, 1974 through December 31, 1987) (note—"Withdrawal, rejection of, or a successful challenge to a guilty plea should be considered the granting of a new trial for purposes of this rule."). The new run date under the former version of Rule 1100 thus became April 16, 1988.

■ On December 31, 1987, our Supreme Court amended Rule 1100(e)(1) effective immediately, and renumbered the amended provision Rule 1100(d)(1). It is now well-settled that the amendments to Rule 1100, including those made to former Rule 1100(e)(1), promulgated and rendered effective immediately on December 31, 1987, operate to extend Rule 1100 run dates in accordance with the provisions of the new version of Rule 1100, so long as the applicable run date under the former version of Rule 1100 had not expired as of December 31, 1987. *See Commonwealth v. Monahan*, 392

Pa.Super. 55, 56–57, 572 A.2d 230, 231 (1990); *Commonwealth v. Corbin*, 568 Pa.Super. 243, 246, 568 A.2d 635, 636 n. 4 (1990); *Commonwealth v. Palmer*, 384 Pa.Super. 379, 381–84, 558 A.2d 882, 883–84 (1989). Because the run date in this case under the former version of Rule 1100 was April 16, 1988 (a date *after* December 31, 1987), the new version of Rule 1100, rather than the former version of Rule 1100 applied. Hence, the trial court erred in calculating the Rule 1100 run date solely with reference to the former rule.

■ Appellee argues, however, that even under the new version of Rule 1100 the run date applicable in this case had expired. Appellee bases this argument on a rigidly literal, and only superficially plausible, construction of the new Pa.R.Crim.P. 1100(d)(1) which provides:

(d)(1) When a trial court has granted a new trial and no appeal has been perfected, the new trial shall commence within one hundred and twenty (120) days after the date of the order granting a new trial, *unless the defendant has been released on bail, in which instance, trial shall commence in accordance with the provision of subsection (a)(3).*

(Emphasis added). Because appellee had been released upon bail, we must refer to the provisions of subsection (a)(3):

(a) (3) Trial in a court case in which a written complaint is filed against the defendant, where the defendant is at liberty on bail, shall commence no later than three hundred sixty-five (365) days *from the date on which the complaint is filed.*

(Emphasis added). Seizing upon the emphasized language in Pa.R.C.P. 1100(a)(3), appellee argues that proceedings after a new trial is granted must be held within 365 days of the filing of the original complaint, rather than 365 days from the granting of a new trial. We cannot agree.

As noted above, the original plea placed appellee "on trial" and fulfilled and *extinguished* the original speedy

trial requirement which arose when the complaint was initially filed against appellee. *See Commonwealth v. Whittall, supra; Commonwealth v. Lewis, supra.* When appellee was permitted to withdraw his plea this effectively granted a new trial and triggered an entirely new speedy trial run date. At issue here is the manner in which our Supreme Court intended new Rule 1100(a)(3) to be incorporated by reference into new Rule 1100(d)(1), to govern the determination of the *new* Rule 1100 run date.

Regarding incorporation by reference, it has been cogently observed that:

> [The] greatest advantage gained by incorporating terms by reference is that the new bill may be shortened with two practical benefits, reduction in volume of the statute books, and application of established precepts of proven worth to a new situation with a minimum of legislative tinkering. Balanced against these benefits, mere inconvenience of looking "beyond the four corners" of the new bill and act should mean little, and as a screen for fraud the device can as a practical matter largely be discounted. *However, since any incorporation of terms by reference inevitably renders them indeterminate as to the referring act, great care should be taken to insure that they are readily and surely determinable. Hence, very serious consideration should be given to the degree to which a proposed referential adoption will render the terms of the new measure difficult to discover, unworkable or unintelligible.*
>
> *A [cautious] draftsman will first of all if the proposed reference is to adopt an act or portion of an act examine the whole of that act, its textual environment, construction, history and administrative application, to make sure that the adoption will neither* heap up a series of statutes, *be unsuitable, nor achieve unintended results.* Having satisfied himself that serious dangers of that sort are avoidable, he will employ at least the following safeguards: (a) Make the reference express and clear. (b) Use only specific reference when adopting

statutory precepts with exact citation, never mere description. There is a saying that the strength of a statute lies in its general phrases. But Ernst Freund showed that to be a half truth, that in some statutes general phrases constitute weakness. The foregoing analysis has demonstrated that in most statutes general references usually do so. (c) Be explicit concerning the extent of the reference in quantity, and never affirmatively provide that the statutory provision referred to shall apply "so far as applicable" or "so far as practicable." (d) *When necessary to adapt the adopted precepts to the subject matter of the referential act, do so expressly in the new bill; do not leave the task to the courts and administrative officials.*

Read, "Is Referential Legislation Worth While?," 2A *Sutherland's Statutory Construction* 719, 729–30 (4th Ed., Singer's 1985 Rev.), *extracting from* 25 Minn.L.Rev. 261 (1941). (Emphasis added). The same holds true when a court acts the part of a legislature in promulgating procedural rules, and is applicable to incorporation of provisions within statutes or rules from within the same act or rule as well as to incorporations from without the act or rule.

For reasons explained *infra*, we find a need to construe the incorporated provision of new Rule 1100(a)(3) into new Rule 1100(d)(1) with a portion of the former provision redacted as unintended surplusage when incorporated in the latter provision.

Construction of the Rules of Criminal Procedure is governed by Pa.R.Crim.P. 2, which provides:

These rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay, and *as nearly as may be in consonance with the rules of statutory constructions.*

(Emphasis added). Two provisions of the Statutory Construction Act, 1 Pa.C.S.A. § 1901 *et seq.,* may plausibly be suggested for application in this case: the rule of strict

construction of "penal provisions" (1 Pa.C.S.A. § 1928(b)(1)), and the presumption that results which are absurd, impossible of execution, or unreasonable were not intended (1 Pa.C.S.A. § 1922(1)). We reject the former as inapplicable, and apply the latter.

"Penal provisions" include "all statutes and embodiments of the common law [or parts thereof] which establish, create or define crimes or offenses including any ordinances which may provide for imprisonment upon conviction or upon failure to pay a fine or penalty." *See* Pa.R.Crim.P. 3(n); *see also In re Investigating Grand Jury*, 496 Pa. 452, 437 A.2d 1128 (1981); *Commonwealth v. Cluck*, 252 Pa.Super. 228, 381 A.2d 472 (1977). Rules of Criminal Procedure do not establish, create, or define crimes, offenses or ordinances authorizing incarceration, fine, or other penalty; hence, Rules of Criminal Procedure are *not* "penal provisions" and are *not* subject to strict construction. To hold otherwise would ignore the specific mandate of Pa.R. Crim.P. 2 to construe Rules of Criminal Procedure to ensure justice, secure simplicity and fairness, and to eliminate unjustifiable expenses and delay. This we may not and will not do.

On the other hand, a presumption that our Supreme Court did not intend results which were absurd, impossible of execution, or unreasonable is entirely consonant with the express considerations set forth in Pa.R.Crim.P. 2 as guides to construction. Consequently, we deem 1 Pa.C.S.A. § 1922(1) incorporated by reference in Pa.R.Crim.P. 2, and we will apply that presumption in this case.

Applying Pa.R.Crim.P. 2 and 1 Pa.C.S.A. § 1922(1) we reject the rigidly literal construction of new Rule 1100(d)(1) suggested by appellee, *i.e.* that the 365 day period under new Rule 1100(d)(1) for unincarcerated defendants runs from the date of the complaint, rather than the date of an unappealed order granting a new trial, as absurd, unreasonable, *and* impossible of execution. While we are aware of the clear mandate from our Supreme Court that we not engraft *new requirements* upon our Supreme Court's Rules

of Criminal Procedure, we find that more than sufficient ambiguity and uncertainty as to the proper construction of new Rule 1100(d)(1), arises from the patent absurdity of a rigid literal construction of new Rule 1100(d)(1), to warrant this Court in embracing a less literal, but more common sense construction of the rule. *Cf. Commonwealth v. Revtai*, 516 Pa. 53, 57–58, 532 A.2d 1, 11 (1987); *In Re JS.*, 387 Pa.Super. 432, 447–49, 564 A.2d 468, 476 (1989) (Kelly, J., concurring and dissenting); *Commonwealth v. Sandley*, 371 Pa.Super. 486, 491–95, 538 A.2d 546, 548–49 (1988) (Kelly, J., dissenting).

If appellee's rigid literal incorporation approach were embraced as the true construction of new Pa.R.Crim.P. 1100(d)(1), then in cases where the defendant was released on bail, and where trial properly commenced under the applicable run date, but 365 days from the date of the complaint had past before the eventual grant of a new trial, *the time period under new Rule 1100(d)(1) would have already expired when the new trial was granted,* as illustrated by the following scenario:

— suspect charged January 1, 1988, and then released on bail;

— defendant brought to trial, or plea entered December 15, 1988;

— new trial granted, mistrial declared, or plea withdrawn, rejected, or successfully challenged on January 3, 1989.

Under this hypothetical, yet not atypical scenario, appellee's construction would set the Rule 1100(d)(1) run date for the new trial to commence at January 1, 1989, two days *before* the new trial was granted. Moreover, in the scenario above, the run date *for a defendant released on bail* would be *January 1, 1989,* while the run date *for an incarcerated defendant* would be *April 28, 1989.* Such a construction of new Rule 1100(d)(1) is patently absurd and unreasonable, and would render compliance with the rule impossible in many cases.

In rejecting a similarly absurd construction of another aspect of Rule 1100 in *Commonwealth v. Marconi*, 523 Pa. 342, 567 A.2d 628 (1989), Justice Larsen opined for our *unanimous* Supreme Court:

According to the *plain meaning* of Rule 1100, *the triggering events for the running of the 120–day period are either* 1) *the date on which the trial court grants a new trial (or declares a mistrial), and no appeal has been perfected;* or 2) the date on which the record has been remanded to the trial court following all action by an appellate court which either grants a new trial or affirms a trial court order granting a new trial (or declaring a mistrial). The problem herein is that the trial court, ... commenced counting the 120–day period from the date on which a mistrial had been declared and subtracted the days on which appellant had waived Rule 1100 and the days during which the case was pending on appeal before Superior Court and this Court. The trial court's math was correct; however, the trial court should have started counting the Rule 1100 120–day limitation period for retrial after all of the appeals had been resolved. *Because the retrial in this case was scheduled to commence 40 days after we remanded the record, there was no violation of Rule 1100 herein.*

\* \* \* \* \* \*

It is obvious that when a matter is on appeal, the case cannot be retried. *To compute the limitation period as the trial court computed it in this case would allow defendants to manipulate the filings of their motions and appeals in such a manner that they could mathematically ensure that 120 days had lapsed and thus escape retrial. Obviously, this type of legal gymnastics will not be countenanced by this Court.*

567 A.2d at 630. (Emphasis added). We consider it appropriate to infer from *Marconi* that our Supreme Court did not intend a construction of new Rule 1100(d)(1) which would result in a run date which would have expired prior

to the date of the event giving rise to the need for a new run date.

Moreover, new Rule 1100(d)(2) contains precisely the same language incorporating new Rule 1100(a)(3) by reference when the defendant is released on bail as is used in new Rule 1100(d)(1). Can it be, that despite the unequivocal language in *Marconi,* our Supreme Court nonetheless intended that the 365 day run date for defendants released on bail to be calculated from the date of the original complaint, rather than the date when the record is remanded finally to the trial court following the last appeal as emphatically stated in *Marconi?* The suggestion of such a construction is even more absurd in this context, as *the construction suggested for the same language in new Rule 1100(d)(2) would lead to a new run date in such cases which would have expired long before the return of the record would have permitted the commencement of a new trial.*[1] This cannot have been our Supreme Court's intent. *Cf. Commonwealth v. Marconi, supra,* 567 A.2d at 630.

> In a footnote in *Marconi,* our Supreme Court stated: Rule 1100(e), as it existed in 1983 (*Rule 1100 has since been amended to provide for a 120–day limitation period except where the defendant has been released on bail.* Pa.R.Crim.P. Rule 1100(d), as amended December 31, 1987, effective immediately. *In that instance, trial must commence within 365 days. Id.*).

567 A.2d 628 n. 1. (Emphasis added). We read this *dicta* to express an intent that the 365 day period for unincarcerated defendants under new Rule 1100(a)(3) as incorporated in new Rule 1100(d)(1), is to be calculated in precisely the same manner as the 120 day period for incarcerated defendants under that rule.

 Thus, we construe new Rule 1100(d)(1) to intend that:

> When a trial court has granted a new trial, and no appeal has been perfected:

---

1. We note that not many cases make it from trial through final appeal to the Supreme Court of the United States *in less than 365 days.*

> the new trial shall commence within 120 days of the
> date of the entry of the order granting a new trial,
> unless the defendant is released on bail, in which in-
> stance, the new trial shall commence within 365 days of
> the order granting a new trial.

We consider this construction far more consonant with the mandate of Pa.R.Crim.P. 2, and the precedent of *Common-wealth v. Marconi, supra,* than appellee's rigidly literal, yet ultimately absurd, proposed construction.

In declining to embrace a pedantically literal construction of the new Rule, we also heed the authoritative statements upon this subject of three of the greatest lights of Ameri-can jurisprudence. Justice Holmes informs us that, "there is no canon against common sense in construing laws as saying what they obviously mean." [2] Justice Frankfurter admonishes us that, in reading legislation, "literalism and evisceration are *equally* to be avoided." [3] Finally, Justice Cardozo encourages and assures us that, when one con-struction "invigorates the act" and the other "saps its life," "the choice between them is not hard." [4] Indeed, the choice is not hard in this case, as common sense commands that we reject an absurd literal construction, which would eviscerate the Rule.

We are also supported in this construction by the general-ly recognized rules regarding the disregarding of words in an enactment as unintended surplusage:

### § 47.37. Words disregarded or eliminated.

A majority of the cases permit the elimination or dis-regarding of words in a statute in order to carry out the legislative intent or meaning. Words may be eliminated only when such action is consistent with the legislative intent or meaning. Courts permit the elimination of

---

2. *Roschen v. Ward,* 279 U.S. 337, 339, 49 S.Ct. 336, 336, 73 L.Ed. 722, 728 (1929).

3. *United States v. Dotterweich,* 320 U.S. 277, 284, 64 S.Ct. 134, 138, 88 L.Ed. 48, 53 (1943). (Emphasis added).

4. *Panama Ref. Co. v. Ryan,* 293 U.S. 388, 439, 55 S.Ct. 241, 256, 79 L.Ed. 446, 469 (1935).

words for one or more of the following reasons: where the word is found in the statute due to the inadvertence of the legislature, *where it is necessary to give the act meaning, effect, or intelligibility, where apparent from the context of the act that the word is surplusage, where the use of the word would lead to an absurdity or irrationality,* where the inclusion of the word was a mere inaccuracy, or *clearly apparent mishap,* or it was obviously erroneously inserted, where the use of the word is the result of a typographical or clerical error, *where it is necessary to avoid inconsistencies and to make the provisions of the act harmonize,* where the words of the statute do not have any useful purpose or are entirely foreign to the subject matter of the enactment, or where it is apparent from the caption of the act or body of the bill that the word is surplusage.

2A *Sutherland's Statutory Construction* § 47.37, at 258 (4th Ed., Sand's Rev.1985). (Emphasis added).

Applying the new Rule 1100(d)(1) as construed above, the new Rule 1100 run date for this case (as of December 31, 1987) was *December 17, 1988.* Thus, the trial court erred in discharging appellee upon a supposed violation of Rule 1100 on *April 27, 1988.*

### Judicial Delay/Due Diligence

■ Alternatively, we find no evidence upon which to sustain a finding of a lack of due diligence on the part of the Commonwealth. Even under appellee's alternate constructions of the Rule 1100 run dates, there was only a *10* day (*130* days from the withdraw of the plea) or *1* day (*366* days from the filing of the original complaint) unexcused delay in this case. As the trial court, and not the prosecutor controlled the docket, and there is no indication that the prosecutor ever failed to appear ready for trial on a date scheduled for trial, we find that the trial court abused its discretion in finding that a lack of due diligence on the Commonwealth's part, rather than excusable judicial delay on its own part, caused the minimal delay involved here.

■ Trial courts are not required to rearrange their dockets to accommodate Rule 1100 run dates. *See Commonwealth v. Smith*, 524 Pa. 72, 569 A.2d 337 (1990); *Commonwealth v. Miller*, 390 Pa.Super. 129, 568 A.2d 228 (1990); *Commonwealth v. Bell*, 386 Pa.Super. 164, 562 A.2d 849 (1989).[5] If cases are taken out of order or reassigned to other judges, however, some care must be taken to avoid excessive, prejudicial delays. *See Commonwealth v. Africa*, 524 Pa. 118, 569 A.2d 920 (1990) (placing appellant's case at the bottom of different judges' dockets when the case was transferred resulted in excessive and prejudicial delays requiring discharge).

Here, the brief delay involved was entirely attributable to the trial court's own docket management; moreover, it was entirely inconsequential. Had the prosecutor failed to appear ready for trial on a date set for trial, or had it controlled the docket, that would be different. As it is, we must agree with the Commonwealth that the trial court abused its discretion in finding a lack of due diligence on the Commonwealth's part, and in denying the Commonwealth's timely petition for an extension on grounds of judicial delay. For this reason too, the order of the trial court must be vacated, the charges reinstated, and the case remanded for a new trial.

## Conclusion

We must vacate the order dismissing the charges against appellee. We note that the reinstatement of criminal charges following an appeal falls within the same rationale which treats a withdrawn plea as the grant of a new trial. Hence, new Rule 1100(d)(2) will control on remand, as

5. Prior to *Commonwealth v. Smith, supra,* a closely divided *en banc* panel of this Court held that judicial delay of 298 days beyond the Rule 1100 run date required discharge. *See Commonwealth v. Hawk,* 390 Pa.Super. 382, 568 A.2d 953 (1990) (per Del Sole, J.; McEwen, Montemuro, Beck and Popovich, JJ., join; Cirillo, P.J., dissents; Tamilia, J., dissents; Johnson, J., dissents and Brosky, J., joins the dissent of Johnson, J.). *Commonwealth v. Smith, supra,* which involved a *555* day delay substantially undermined, if not overruled *sub silentio,* the majority's reasoning in *Commonwealth v. Hawk, supra.*

appellee faces, in effect, another new trial. Another new speedy trial run date must be calculated in accordance with new Rule 1100(d)(2), *Commonwealth v. Marconi, supra,* and the reasoning set forth in this opinion.

Order Vacated, Charges Reinstated, Jurisdiction Relinquished.