J-S45015-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :    IN THE SUPERIOR COURT OF
                                                  :                PENNSYLVANIA
                                                  :
                      V.                        :
                                                  :
                                                  :
JEFFREY MATTHEW BURGOS           :
                                                  :
                        Appellant             :       No. 935 MDA 2023

Appeal from the Judgment of Sentence Entered February 7, 2022
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s): CP-54-CR-0001599-2020

BEFORE:    BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:            **FILED: MARCH 26, 2024**

Jeffrey Matthew Burgos appeals from the amended judgment of sentence imposed on February 7, 2022.[1] We affirm.

In December 2019, when Appellant's then-girlfriend visited him in jail, he received drugs from her when she kissed him. On June 8, 2020, Appellant was charged with possession of controlled substance contraband by an inmate, possession of a controlled substance, and possession of drug

---

[*] Former Justice specially assigned to the Superior Court.

[1] Although Appellant purported to appeal from the order denying his motion to dismiss pursuant to Pa.R.Crim.P. 600, the appeal should properly be from the amended judgment of sentence imposed on February 7, 2022. ***See Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa.Super. 2001) (*en banc*) (explaining that "[i]n a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions"). We corrected the caption accordingly.

paraphernalia. *See Commonwealth v. Burgos*, 285 A.3d 937, 2022 WL 4295433, at \*1-2 (Pa.Super. 2022) (non-precedential decision).

After delays that will be discussed *infra*, Appellant's case attached for the trial term in the Schuylkill County Court of Common Pleas beginning on January 31, 2022. On January 28, 2022, Appellant filed a Rule 600 motion to dismiss all charges with prejudice. The trial court denied the motion without a hearing. Appellant proceeded to trial on February 1, 2022. He was convicted and sentenced to a term of forty months to ten years of incarceration. Thereafter, on February 7, the trial court entered an amended judgment of sentence ordering Appellant to pay the costs of prosecution.

Appellant then appealed to this Court, alleging that the trial court "improperly concluded that Rule 600 was suspended in Schuylkill County from the beginning of the local judicial emergency on March 16, 2020, until August 31, 2021." *Id*. at \*2. Upon review, we agreed and determined that Rule 600 was only suspended in Schuylkill County through June 14, 2020. *Id*. at. \*6. Thus, we vacated the order denying Appellant's motion to dismiss and remanded to the trial court for a hearing concerning Appellant's Rule 600 motion and the due diligence undertaken by the Commonwealth in preparing for his trial. *Id*. at \*7.

At the Rule 600 hearing following remand, the Commonwealth called District Attorney ("DA") Michael O'Pake, Deputy Court Administrator John Richmond, and Assistant District Attorney ("ADA") Julie Werdt as witnesses.

They testified regarding the procedures of the Schuylkill County court system during the COVID-19 pandemic and the actions taken by all parties surrounding Appellant's trial.

Following the hearing, the court filed an order and opinion, wherein it denied Appellant's Rule 600 motion and found that the Commonwealth had acted with appropriate due diligence in bringing Appellant's case to trial and that any judicial delay was excludable. This timely appeal followed. The trial court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant complied. In lieu of a Rule 1925(a) opinion, the court directed us to its order and opinion denying Appellant's Rule 600 motion.

Appellant proffers the following questions for our review, which we have reordered for ease of disposition:

> 1. Did the trial court abuse its discretion and/or commit an error of law by denying Appellant's pre-trial motion to dismiss for violation of Pa.R.Crim.P. 600 by ruling that the Commonwealth acted with due diligence?
>
> 2. Did the trial court abuse its discretion and/or commit an error of law by denying Appellant's pre-trial motion to dismiss for violation of Pa.R.Crim.P. 600 by ruling that the judicial delay of the Court of Common Pleas of Schuylkill County be used as excludable time or excusable delay?
>
> 3. Did the trial court abuse its discretion and/or commit an error of law by denying Appellant's pre-trial motion to dismiss for violation of Pa.R.Crim.P. 600 by ruling that the delay attributable to the Court of Common Pleas of Schuylkill County was not so egregious that a constitutional right had been impaired?

Appellant's brief at 4 (cleaned up).

All of Appellant's claims challenge the trial court's denial of his Rule 600 motion.  Thus, the following legal principles apply:

> In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration.  An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.
>
> The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court.  An appellate court must view the facts in the light most favorable to the prevailing party.
>
> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600.  Rule 600 serves two equally important functions:  (1) the protection of the accused's speedy trial rights, and (2) the protection of society.  In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it.  However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.
>
> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime.  In considering these matters, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

***Commonwealth v. Carl***, 276 A.3d 743, 748 (Pa.Super. 2022) (cleaned up).

- 4 -

Turning to the statute, Rule 600 provides that a trial must commence within 365 days from the date the complaint is filed. *See* Pa.R.Crim.P. 600(A)(2)(a). When, as in the matter *sub judice*, a defendant elects to proceed to trial instead of entering a plea, the trial will commence on the day the court calls the case to trial. *See* Pa.R.Crim.P. 600(A)(1). Importantly, not all time between the filing of the complaint and calling the case to trial counts towards the 365 days. *See Carl*, 276 A.3d at 749. Subsection (C) sets forth the method of computation as follows:

> (1) For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation.
>
> . . . .
>
> (3)(a) When a judge or issuing authority grants or denies a continuance:
>
>> (i) the issuing authority shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance; and
>>
>> (ii) the judge shall record the identity of the party requesting the continuance and the reasons for granting or denying the continuance. The judge also shall record to which party the period of delay caused by the continuance shall be attributed, and whether the time will be included in or excluded from the computation of the time within which trial must commence in accordance with this rule.

Pa.R.Crim.P. 600(C).

Finally, subsection (D) provides the remedy for a violation of Rule 600's prompt-trial requirements:

> When a defendant has not been brought to trial within the time periods set forth in paragraph (A), at any time before trial, the defendant's attorney . . . may file a written motion requesting that the charges be dismissed with prejudice on the ground that this rule has been violated. . . . The judge shall conduct a hearing on the motion.

Pa.R.Crim.P. 600(D).

This Court has explained that the relationship of these subsections results in a three-step process for calculating whether a defendant has been brought to trial promptly:

> First, Rule 600(A) provides the mechanical run date. Second, we determine whether any excludable time exists pursuant to Rule 600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.
>
> If the trial takes place after the adjusted run date, we apply the due diligence analysis set forth in Rule 600[C]. As we have explained, Rule 600 encompasses a wide variety of circumstances under which a period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of diligence. Any such period of delay results in an extension of the run date. Addition of any Rule 600 extensions to the adjusted run date produces the final Rule 600 run date. If the Commonwealth does not bring the defendant to trial on or before the final run date, the trial court must dismiss the charges.

*Carl*, 276 A.3d at 749.

At a Rule 600 hearing, the Commonwealth bears the burden of establishing by a preponderance of the evidence that it behaved with due diligence throughout the criminal proceedings. *Id*. at 748. "Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due

diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth." *Commonwealth v. Wiggins*, 248 A.3d 1285, 1289 (Pa.Super. 2021). Furthermore, our Supreme Court has held the following:

> [I]n ruling on a defendant's Rule 600 motion to dismiss, a trial court must first determine whether the Commonwealth has met its obligation to act with due diligence throughout the life of the case; if the Commonwealth meets its burden of proving due diligence, only then may the trial court rely upon its own congested calendar or other scheduling problems as justification for denying the defendant's motion.

*Commonwealth v. Harth*, 252 A.3d 600, 618 (Pa. 2021).

It is well-settled that judicial delay may serve as a basis for extending the time within which the Commonwealth may begin trial "if the Commonwealth was prepared to commence trial prior to the expiration of the mandatory period but the court was unavailable because of scheduling difficulties and the like." *Commonwealth v. Preston*, 904 A.2d 1, 14 (Pa.Super. 2006) (cleaned up). Delay is excusable if "caused by circumstances beyond the Commonwealth's control and despite its due diligence." *Commonwealth v. Martz*, 232 A.3d 801, 810 (Pa.Super. 2020).

With these principles in mind, we turn to the facts of the instant case. Here, since Appellant was charged with the drug-related offenses on June 8, 2020, the mechanical run date was June 8, 2021. Appellant's trial occurred on February 1, 2022, 236 days after the mechanical run date. *Burgos*, 2022 WL 4295433, at *5. Thus, as we explained in *Carl*, the trial court was required

to determine whether any time was excludable pursuant to Rule 600(C). Following the Rule 600 hearing, the court found excludable judicial delay and determined that the Commonwealth had, in fact, exercised due diligence throughout the life of the case.

We review the trial court's determinations for an abuse of discretion. *Carl*, 276 A.3d at 748. Appellant avers that the trial court abused its discretion as to its findings regarding both the Commonwealth's due diligence and the excludable judicial delay. *See* Appellant's brief at 13, 18. Specifically, Appellant argues that the Commonwealth failed to exercise due diligence because it neglected to request a transportation order directing the authorities to transfer him from the state correctional facility to the courthouse. *Id*. at 20. He states that "had [DA] O'Pake submitted one, single, petition for issuance of a transportation order to the trial court during any of the 2021 terms and said petition was denied, Appellant['s] argument for lack of due diligence would have been severely weakened." *Id*. at 19-20. Since the Commonwealth did not petition for issuance of a transportation order, Appellant concludes that the efforts of the Commonwealth "to bring [him] to trial cannot be deemed to be reasonable." *Id*.

As to the court's findings regarding periods of excludable judicial delay, Appellant posits, "if a delay beyond the prescribed period for trial is due to the judiciary, the record must show the causes of the delay and the reasons why it was unavoidable." *Id*. at 16. Against this backdrop, he highlights that although the Commonwealth invoked judicial delay during the Rule 600

hearing, it failed to present any documentation detailing the district's judicial policy that suspended the transportation of state prisoners. *Id*. at 17-18. In this vein, Appellant emphasizes that the Commonwealth failed to call the former President Judge of the Schuylkill County Court of Common Pleas, the Honorable William E. Baldwin, to testify. *Id*.

The trial court rejected the foregoing arguments and determined that the Commonwealth satisfied its burden of proving that it exercised due diligence. *See* Opinion and Order, 6/13/23, at 12. More specifically, the trial court concluded that "the Commonwealth has met its burden to demonstrate that it exercised due diligence at all relevant periods throughout the life of this case." *Id*. Furthermore, the court determined that "any delay" in bringing Appellant's case to trial "resulted from judicial delay." *Id*. at 11. It stressed the fact that the Commonwealth was prepared to commence trial in March 2021 and remained diligent and ready for the rest of the time until trial. *See id*. at 6.

The certified record supports the findings of the trial court. At the hearing on Appellant's Rule 600 motion, the Commonwealth recounted its thorough handling of Appellant's case. DA O'Pake comprehensively related the scheduling of Appellant's preliminary hearing, highlighting that only twenty-four days passed between the expiration of the Rule 600 suspension and the originally scheduled date of the preliminary hearing. *See* N.T. Hearing, 3/27/23, at 6-7. Furthermore, the Commonwealth only ever requested one forty-two-day continuance before the preliminary hearing

because of an unavailable witness. *See id*. Otherwise, all delay concerning Appellant's preliminary hearing was attributable to the court system or, in one instance, because Appellant requested a continuance. *See id*.

DA O'Pake further elucidated the procedure of the District Attorney's office in scheduling arraignments. *See* N.T. Hearing, 3/27/23, at 8-21. Additionally, he detailed the appropriate communication that occurred throughout the process of scheduling Appellant's arraignment, which had to be delayed several times due to the need for a video arraignment and because the trial judge was severely ill with COVID-19. *See id*. at 13-20. Notably, none of these delays were attributable to the Commonwealth, and the District Attorney's office was prepared to proceed with Appellant's arraignment from the time that it was first scheduled. *See id*. at 8. After Appellant was arraigned in January 2021, the case was slated for the next available status conference in March 2021.

The certified record also bears out that the Commonwealth was continuously ready to commence trial beginning in March 2021. *See* N.T. Hearing, 3/27/23, at 82. Prior to March, ADA Werdt, to whom Appellant's case was assigned, stated that she had collected the testimony of all witnesses, a pertinent lab report, and other evidence. *Id*. Hence, she was "ready to go" if the case was listed for trial in March 2021. *Id*. Likewise, she

confirmed that the Commonwealth was prepared during the ensuing trial terms scheduled in June, August, and October 2021.[2] *Id*.

ADA Werdt also outlined the steps she took to ensure that Appellant would be tried directly after the suspension was lifted. In October 2021, she corresponded with administrators at the state prison where Appellant was housed to discuss the anticipated return of prisoner transportation. *Id*. at 83-84. The same month, ADA Werdt emailed a Pennsylvania state trooper regarding his availability to testify if Appellant's case was called for trial. *Id.* at 85-86.

Moreover, we reject Appellant's related argument that the Commonwealth failed to exercise due diligence in neglecting to specifically request a transportation order for Appellant. As noted, DA O'Pake testified that the court repeatedly informed his office that state prisoners would not be transported for trial. *See id*. at 39-40. Similarly, regarding the lack of a petition for a transportation order, ADA Werdt stated: "[I]t was very clearly communicated to me that the [c]ourt was not . . . allowing prisoners to come here. They weren't doing it." *Id*. at 87. Hence, it is apparent from the record that because the court expressly indicated that it would not allow prisoners to be transported from state prisons, the District Attorney's office declined to

---

[2] Schuylkill County "does not have a continuous criminal court calendar like many larger counties in Pennsylvania, but instead has five two-week criminal trial terms per year set in advance in the court calendar." Order and Opinion, 6/13/23, at 10.

engage in the futile exercise of requesting a transportation order for Appellant. *Id*. at 39, 87.

In sum, the Commonwealth's evidence reveals that, outside of one forty-two-day continuance before the preliminary hearing, it continuously exercised due diligence and that the reasons for the delay incurred in prosecuting Appellant were not attributable to it. Thus, the trial court did not err in determining that the Commonwealth was diligent throughout the entirety of the case.

Furthermore, the record supports the trial court's finding of excludable judicial delay notwithstanding the Commonwealth's inability to present written documentation of the policy suspending the transfer of prisoners from state facilities. Indeed, it is obvious from the record that the court proscribed the transportation of state prisoners to the county courthouse due to the proliferation of COVID-19.[3] *See* N.T. Hearing, 3/27/23, at 69. During the Rule 600 hearing, DA O'Pake, Mr. Richmond, and ADA Werdt all testified that, because of the COVID-19 pandemic, President Judge Baldwin precluded the transportation of prisoners housed in state institutions due to concerns for the health and safety of courthouse staff and prisoners. *See id*. at 29-30, 64-66,

---

[3] We reject Appellant's contention that his claims warrant relief because the Commonwealth neglected to present either President Judge Baldwin's testimony or the relevant orders during the Rule 600 hearing. At the close of the hearing, at Appellant's request, the court took judicial notice of all twenty-two orders issued by President Judge Baldwin related to court procedure during the COVID-19 pandemic. *See* N.T. Hearing, 3/27/23, at 90. The fact that Appellant, rather than the Commonwealth, introduced these orders is of no moment.

82-83.  DA O'Pake stated that Judge Baldwin was not allowing the District Attorney's office to bring in "any state prisoners or out-of-county prisoners." *Id*. at 31.  Further, Mr. Richmond confirmed that it was "impossible" to transport state prisoners for trial.  *Id*. at 65.  ADA Werdt then reiterated the testimony of DA O'Pake, noting that President Judge Baldwin "said no state prisoners are coming in."  *Id*. at 87.  Moreover, President Judge Baldwin's orders, of which the trial court took judicial notice, reflect his reasonable concerns for the health and safety of everyone involved with the Schuylkill County court system.  Thus, the record confirms the court's finding that any judicial delay during Appellant's case was reasonable and necessary in protecting court personnel and prisoners from the "then[-]devastating effects of COVID[-]19 during a critical time."  Order and Opinion, 6/13/23, at 11.

Based on all of the foregoing, the trial court did not abuse its discretion in determining that the Commonwealth exercised due diligence throughout the life of the case and that the judicial delay was excusable.

Finally, albeit relatedly, Appellant alleges that the delay attributable to the court was so egregious that his constitutional rights were impinged.  *See* Appellant's brief at 20.  He argues that he is entitled to relief based upon our High Court's decision in *Commonwealth v. Africa*, 569 A.2d 920 (Pa. 1990).  In *Africa*, the defendant's case was transferred among different trial judges numerous times and, each time, his case was placed at the bottom of the new judge's trial list.  Due to this breakdown in the judicial system, Africa was not tried for over two years following the filing of the complaint.  *Id*. at 922-23.

Our Supreme Court held that, while the Commonwealth pursued the case with appropriate diligence, the judicial delay was nevertheless so egregious that Africa's constitutional right to a speedy trial had been impaired. *Id.* at 924-25. Accordingly, it ordered the dismissal of the charge and the discharge of Africa. *Id*. at 926.

Appellant avers that this case is similar to the facts underlying the High Court's decision in *Africa*, claiming that his right to a speedy trial was deemed to be less important than those incarcerated in other facilities. *See* Appellant's brief at 20-21. Therefore, he argues that the trial court should have dismissed the charges leveled against him. *Id*. at 21.

The trial court found Appellant's argument unconvincing, noting that the COVID-19 pandemic was a time of "unprecedented health crisis and challenge. . . ." Order and Opinion, 6/13/23, at 12. Hence, the court concluded that Appellant's reliance on *Africa* was misguided and that any delay was not egregious. *Id*. In denying Appellant's request for relief, the trial court did not abuse its discretion.

The challenges faced during the COVID-19 pandemic were unparalleled and distinct from the situation in *Africa*. In the matter *sub judice*, President Judge Baldwin's directives that prisoners incarcerated in state institutions should not be transported to the courthouse were based upon concerns for the health and safety of those in the prisons and in the courthouse. *See* N.T Hearing, 3/27/23, at 67-69. This was not egregious conduct, as it was predicated upon a desire to keep court personnel and prisoners safe. While

- 14 -

Appellant and Africa each had to wait beyond the prescribed period for their trial, Appellant's situation is not analogous, as confronting the COVID-19 pandemic was far different than the breakdown in the court system that occurred in *Africa*.  Thus, Appellant's claim merits no relief.

Accordingly, we are unpersuaded by all of Appellant's contentions and, as such, we affirm his judgment of sentence.

Judgment of sentence affirmed.
Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary


Date: 03/26/2024