546 A.2d 1168

**Joseph SALERNO and Juliet Salerno, Appellants,**

**v.**

**PHILADELPHIA NEWSPAPERS, INC. t/a Philadelphia Daily News, Appellee.**

Superior Court of Pennsylvania.

Submitted April 20, 1988.

Filed Aug. 22, 1988.

Michael T. Grimes, Philadelphia, for appellants.

Katherine L. Hatton, Philadelphia, for appellee.

Before OLSZEWSKI, KELLY and HOFFMAN, JJ.

KELLY, Judge:

This is an appeal from an order of the trial court dated October 8, 1987, granting summary judgment in favor of Philadelphia Newspapers, Inc., defendant/appellee, and against Joseph and Juliet Salerno, plaintiffs/appellants. We affirm.

On February 22, 1983, the plaintiffs instituted this action against Philadelphia Newspapers, Inc., as a result of an article published by the appellee which appeared in the Philadelphia Daily News on August 12, 1982. In their amended complaint, the appellants alleged three causes of action: defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress. The appellee subsequently filed preliminary objections alleging,

*inter alia,* that the words printed in the article were not capable of defamatory meaning or capable of supporting a cause of action for intentional or negligent infliction of emotional distress. The Honorable Thomas A. White overruled the appellee's objections on January 5, 1984, without an opinion.

The case proceeded in its discovery phase for more than three years before any further determination was made. Based on the fruits of the discovery which occurred during this time, the appellee moved for summary judgment on March 25, 1987. Judge Berel Caesar granted the appellee's motion by an order dated May 13, 1987. This appeal followed.

The facts which gave rise to this case may be summarized as follows. On Tuesday, August 10, 1982, Joseph Salerno, Sr., one of the two appellants, was shot in the neck by an unidentified gunman while in a hotel in Wildwood Crest, New Jersey. Philadelphia Newspapers, Inc. reported this incident on the front page of the August 12, 1982 edition of the Philadelphia Daily News. The headlines to this article read " 'Canary's' Dad Shot," "Son Testified Against Mob Figure Scarfo," and "Mob Takes Revenge: Witness' Father Shot." The text of the article attributed statements to unnamed Wildwood Crest police sources, inferring an organized crime retaliation motive behind the shooting. In addition, the article cited two occasions in which the appellants' son, Joseph Salerno, Jr. testified against Nicodemo Scarfo, a reputed member of organized crime.

On appeal, the appellants' contend that the trial court erred in granting summary judgment upon finding that material published by the appellee was not capable of defamatory meaning and likewise not capable of supporting an action for intentional or negligent infliction of emotional distress when a court of coordinate jurisdiction had ruled that it was capable of both in denying appellee's preliminary objections. The appellants also contend that the trial court erred by concluding appellants failed to sustain the burden of establishing the existence of a material question of fact

regarding the falsity of the challenged statements in response to a motion for summary judgment in a defamation action.

## I.

In support of their first claim, appellants argue that the lower court was precluded from granting the appellee's motion for summary judgment because the denial of appellee's preliminary objections settled the issues of whether the challenged article was capable of defamatory meaning and whether the pleadings supported causes of action for intentional and/or negligent infliction of emotional distress. The appellants urge that because the earlier ruling held that both causes of action could be sustained upon the allegations in the complaint, the trial court was bound by that prior determination upon review at the summary judgment stage. We cannot agree.

▆▆▆ Ordinarily, a trial judge should not place himself in the position to overrule a decision by another judge of the same court in the same case. *Melendez v. City of Philadelphia*, 320 Pa.Super. 59, 62 n. 2, 466 A.2d 1060, 1062 n. 2 (1983) (*citing Duffy v. Gerst*, 286 Pa.Super. 523, 429 A.2d 645 (1981)). The purpose of this rule is to ensure a degree of pretrial finality "so that judicial economy and efficiency can be maintained." *Commonwealth v. Eck*, 272 Pa.Super. 406, 409, 416 A.2d 520, 522 (1979) (*quoting Commonwealth v. Griffin*, 257 Pa.Super. 153, 157, 390 A.2d 758, 760 (1978)). However, the rule is not intended to preclude granting summary judgment following denial of preliminary objections. "The failure to present a cause of action upon which relief can be granted may be raised at any time. A motion for summary judgment is based not only upon the averments of the pleadings but may also consider discovery depositions, answers to interrogatories, admissions and affidavits." *Austin J. Richards, Inc. v. McClafferty*, 371 Pa.Super. 269, 276, n. 1, 538 A.2d 11, 14–15, n. 1 (1988). We can discern no reason for prohibiting the consideration and granting of a summary judgment if the record as it then

stands warrants such action. *Cf. DiAndrea v. Reliance Savings and Loan Ass'n*, 310 Pa.Super. 537, 543, 456 A.2d 1066, 1069 (1983). This is particularly true when the preliminary objections were denied without an opinion. *Farber v. Engle*, 106 Pa.Cmwlth. 173, 525 A.2d 864 (1987). Moreover, where, as here, dismissal of the entire complaint on motion for summary judgment is appropriate, preclusion of consideration of the summary judgment motion by application of the rule stated, would have further burdened the parties and the court by requiring them to undergo the time and expense of an unnecessary trial, and thereby thwart the very purpose the rule was intended to serve, *i.e.* that judicial economy and efficiency be maintained. Thus, we reject appellant's first contention on appeal.

## II.

We now turn to an examination of the propriety of the order granting summary judgment on the causes of action for defamation, intentional infliction of emotional distress, and negligent infliction of emotional distress. We address each *seriatim.*

Our role in the review of summary judgment orders is well established. This Court in *McClafferty, supra,* pronounced that standard as follows:

A motion for summary judgment may properly be granted only 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Pa.R.C.P. 1035(b). *See also Rybas v. Wapner*, 311 Pa.Super. 50, 54, 457 A.2d 108, 109 (1983); *Williams v. Pilgrim Life Insurance Co.*, 306 Pa.Super. 170, 172, 452 A.2d 269, 270 (1982). In passing upon a motion for summary judgment, the court must examine the record in the light most favorable to the nonmoving party. *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 82–83, 468 A.2d 468, 470 (1983); *Zimmerman v. Zimmerman*, 322 Pa.Su-

per. 121, 124–125, 469 A.2d 212, 213 (1983); *Wilk v. Haus,* 313 Pa.Super. 479, 482, 460 A.2d 288, 289–290 (1983). *McClafferty, supra,* 371 Pa.Superior Ct. at 273–274, 538 A.2d at 13 (*quoting Thorsen v. Iron and Glass Bank,* 328 Pa.Super. 135, 140–141, 476 A.2d 928, 930–931 (1984)). Moreover, it is clear that to survive a motion for summary judgment, the non-moving party may not rely merely upon the controverted allegations of the pleadings, "but must set forth specific facts by way of affidavit, or in some other way as provided by the rule, demonstrating that a genuine issue exists." *Ressler v. Jones Motor Co., Inc.,* 337 Pa.Super. 602, 609, 487 A.2d 424, 429 (1985) (*citing Phaff v. Gerner,* 451 Pa. 146, 303 A.2d 826 (1973); Pa.R.C.P. 1035(d)).

## A.

In an action for defamation, this Court has held that it is the function of the trial court, to make a threshold determination of whether the challenged publication is capable of defamatory meaning, and if the communication is not capable thereof, there is no reason for the matter to proceed to trial. *Dobson by Dobson v. WBRE TV, Inc.,* 347 Pa.Super. 612, 614, 500 A.2d 1226, 1227 (1985) (*citing Thomas Merton Center v. Intern Corp.,* 497 Pa. 460, 442 A.2d 213 (1981) *cert. denied* 457 U.S. 1134, 102 S.Ct. 2961, 73 L.Ed.2d 1351 (1982)); *see also Corabi v. Curtis Publishing Company,* 441 Pa. 432, 273 A.2d 899 (1971); *Agriss v. Roadway Express, Inc.,* 334 Pa.Super. 295, 306, 483 A.2d 456 (1984); *Beckman v. Dunn,* 276 Pa.Super. 527, 419 A.2d 583 (1980); Restatement (Second) of Torts § 614(1) (1977).

"A publication is defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or deter third persons from associating and dealing with him." *Baker v. Lafayette College,* 350 Pa.Super. 68, 76, 504 A.2d 247, 251 (1986) (*citing Rybas v. Wapner,* 311 Pa.Super. 50, 457 A.2d 108 (1983)). It is not sufficient if the words are merely embarrassing or annoying to the plaintiff. *Agriss v. Roadway Express, Inc., supra; Beckman v. Dunn, supra.* Moreover, liability in an

action for defamation is not dependent upon the author's intent. *Agriss v. Roadway Express, Inc., supra.* In determining whether a newspaper article is defamatory, "the trial court must decide whether it can reasonably be construed to have the libelous meaning ascribed to it by the complaining party." *Zartman v. Lehigh County Humane Soc.,* 333 Pa.Super. 250–51, 482 A.2d 266, 269 (1984) (*citing Corabi, supra; Rutt v. Bethlehems' Globe Publishing Co.,* 335 Pa.Super. 163, 484 A.2d 72 (1984)). Our Supreme Court has explained:

> The test is the effect the article is fairly calculated to produce, the impression it would naturally engender, in the minds of the average persons among whom it is intended to circulate. The words must be given by judges and juries the same significance that other people are likely to attribute to them.

*Corabi, supra,* 441 Pa. at 447, 273 A.2d at 907 (*quoting Boyer v. Pitt. Publishing Co.,* 324 Pa. 154, 157, 188 A. 203, 204 (1936)); *see also Gordon v. Lancaster Osteopathic Hospital Association, Inc.,* 340 Pa.Super. 253, 261, 489 A.2d 1364, 1368 (1985); *Agriss v. Roadway Express, Inc., supra,* 334 Pa.Superior Ct. at 304–307, 483 A.2d at 461–462.

■ With the foregoing in mind, we find that the newspaper article in question is not capable of defamatory meaning. The appellants claim that by including the appellants' surname in a headline which was accompanying text announcing that mob retaliation was suspected in the described shooting incident, Philadelphia Newspapers, Inc. has defamed appellants by associating them with organized crime. This claim is without merit. The headlines "Canary's Dad Shot" and "Son Testified Against Mob Figure Scarfo" refer to the fact that the appellant was the *father* of a person who testified against alleged members of organized crime. Similarly, the headlines "Mob Takes Revenge: Witness' Father Shot" identifies appellant, in relation to his son, and offers a reported explanation for the shooting. The headline on the last page which reads merely, "Salerno," cannot in any way be found to reasonably imply that

the appellants were associated with organized crime. Rather, this final headline is intended to signal readers that the conclusion of the article appears on that page. Likewise, the text of the article conveys no message of mob association on the part of the appellants. The story began:

Investigators said last night that the wounding of a South Philadelphia man at his Wildwood Crest motel appeared to be retaliation for testimony the man's son gave against reputed mob boss Nicodemo 'Little Nicky' Scarfo.

The inevitable conclusion a reader must arrive at, is that, if the mob were in fact involved, Joseph Salerno, Sr. was an innocent victim of vengeance induced by his son's testimony. Nowhere does the article explicitly state, nor even implicitly suggest, that the appellant, as the victim of mob retaliation, was himself associated with "the mob." We hold that the trial court correctly ruled, as a matter of law, that the published material was not capable of defamatory meaning. Due to our disposition of this threshold issue, appellant's contention that the trial court erred by concluding that the appellants had failed to sustain the burden of proving falsity has been rendered moot.

## B.

In an action for intentional infliction of emotional distress, recovery will be allowed "where there is conduct 'so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized society.' " *Gordon v. Lancaster Osteopathic Hospital Association, Inc., supra,* 340 Pa.Superior Ct. at 266, 489 A.2d at 1371 (*quoting* Restatement (Second) of Torts § 46, comment (d) (1977)); *Kazatsky v. King David Memorial Park, Inc.,* 515 Pa. 183, 527 A.2d 988 (1987). It is for the court in the first instance to determine whether the conduct may reasonably be regarded so extreme as to permit recovery. *Lazor v. Milne,* 346 Pa.Super. 177, 179, 499 A.2d 369, 370 (1985) (citing cases). Determination of whether a cause of action exists for intentional infliction of emotional distress must of course be made on a case by case basis. We note that in Pennsylva-

nia, this action has been found to lie in only a limited number of cases. *See Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir.1979) (reckless diagnosis of a fatal disease); *Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970) (mishandling of corpse); *Hoffman v. Memorial Osteopathic Hospital*, 342 Pa.Super. 375, 492 A.2d 1382 (1985) (denial of medical treatment in emergency room); *Cf. Commonwealth v. Balisteri*, 329 Pa.Super. 148, 478 A.2d 5 (1984) (having sexual contact with two young children and encouraging sexual conduct between them). Cases which do not rise to this level of extreme and outrageous conduct have consistently been held to present no cause of action for intentional infliction of emotional distress. *See Kutner v. Eastern Airlines, Inc.* 514 F.Supp. 553 (1981) (no cause of action against airline for rerouting flight due to weather conditions); *Daughen v. Fox*, 372 Pa.Super 405, 539 A.2d 858 (1988) (no cause of action against veterinarian for confusing x-rays causing death of dog); *Dawson v. Zayre Dept. Stores*, 346 Pa.Super. 357, 499 A.2d 648 (1985) (no cause of action against store employee for using a racial epithet in an argument with customer); *Gordon v. Lancaster Osteopathic Hospital Association, Inc., supra* (no cause of action against colleagues for publishing letters of "no confidence"). In view of the above law, even in the light most favorable to the appellant as the non-moving party, the publication of a newspaper article which merely reports a shooting incident and possible motives thereof, cannot support a cause of action for intentional infliction of emotional distress.

## C.

A cause of action for negligent infliction of emotional distress has never been recognized in this state based upon facts in any way analogous to those alleged in the instant case. In *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979), the Pennsylvania Supreme Court set forth parameters for pleading the cause of action for negligent infliction of emotional distress. After determining that the injury complained of must be reasonably foreseeable, the *Sinn* Court

held that in determining such foreseeability, the court must consider three criteria:

(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it.

(2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.

(3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship.

*Sinn, supra,* 486 Pa. at 170–171, 404 A.2d at 685; *see also Mazzagati v. Everingham by Everingham,* 502 Pa. 266, 276, 516 A.2d 672, 677 (1986) (*citing Sinn, supra*). The facts as alleged in the instant case simply do not state a cause of action for the type of liability recognized in this state in a negligent infliction of emotional distress action.

## CONCLUSION

Based on all of the foregoing reasons, we conclude that no genuine issue of material fact remained, and summary judgment was therefore properly granted. Accordingly, we affirm the trial court's order.

ORDER AFFIRMED.