Bernice **CAMPBELL**, Appellant,

v.

Michael **ATTANASIO**, D.O., Vincent E. Baldino, D.O., Jaime Volpe, D.O., Daniel Parenti, D.O., John P. Simelaro, D.O., Michael A. Venditto, D.O., Thaddeus Golden, M.D., Vincent E. Baldino, D.O., P.C., D/B/A Ritner Medical Associates, P.C., Intermed Associates, P.C., Methodist Hospital, also D/B/A Methodist Hospital, Division of Thomas Jefferson University Hospital, and Thomas Jefferson University Hospitals, Inc., also D/B/A Methodist Hospital Division of Thomas Jefferson University Hospital, Appellees.

Superior Court of Pennsylvania.

Argued March 10, 2004.

Filed Nov. 30, 2004.

Steven A. Friedman, Havertown, for appellant.

Sheila A. Haren, Philadelphia, for Golden.

Stanley Thompson, Philadelphia, for Methodist Hospital and Thomas Jefferson University Hospital.

BEFORE: BOWES, McCAFFERY and POPOVICH, JJ.

OPINION BY BOWES, J.:

¶ 1 Bernice Campbell appeals from the July 18, 2003 order granting summary judgment in favor of Thaddeus Golden, M.D., Methodist Hospital, and Thomas Jefferson University Hospital, Inc. ("Thomas Jefferson Hospital") (collectively referred to as "Appellees") in this medical malpractice action.[1] For the reasons stated herein, we vacate the order and remand for trial.

¶ 2 The record reveals that on January 19, 1998, Appellant was admitted to the Methodist Hospital Division of Thomas Jefferson Hospital where she was diagnosed with pneumonia and chronic obstructive pulmonary disease. Shortly thereafter, Appellant developed severe anxiety and was treated with a variety of oral sedatives including Benadryl, Restoril,

---

1. The other individuals and business entities listed as defendants in the caption were dismissed from the case prior to the grant of summary judgment. Thus, the order in question is final and appealable. *See K.H. v. J.R.*, 573 Pa. 481, 826 A.2d 863 (2003) (order granting summary judgment as to one or more parties is deemed appealable as of right only after disposition of claims pertaining to remaining parties); Pa.R.A.P. 341(b)(1).

and Ativan. According to Appellant, these drugs restricted her breathing and caused her to suffer "mild respiratory discomfort." Amended Complaint, 5/9/00, at 16. At 1:00 a.m. on January 22, 1998, Dr. Thaddeus Golden, a third-year resident in the department of internal medicine at Methodist Hospital, prescribed intravenous Ativan, a sedative so powerful that the United States Food and Drug Administration has restricted its use to: (1) treating individuals who suffer from recurrent seizures; and (2) anesthetizing patients prior to surgery. *Id.* at 17. Within hours of receiving the intravenous Ativan, Appellant, who did not suffer from chronic seizures or require surgery, developed acute respiratory distress. When this occurred, hospital employees performed an emergency endotracheal intubation and placed Appellant on a mechanical respirator. Appellant remained intubated for the next four days, during which time she developed gastrointestinal bleeding caused by "stress gastritis and ulcer." *Id.* at 20.

¶ 3 Although she was discharged from the hospital on January 31, 1998, Appellant remained traumatized by the acute respiratory distress she experienced at Methodist Hospital, and she required assistance performing basic tasks such as cooking, bathing, and dressing for a period of five weeks. Appellant then sought psychiatric treatment with Dr. Amita Talati, who diagnosed Appellant as suffering from generalized anxiety disorder and post-traumatic stress disorder.

¶ 4 Appellant instituted this action on January 18, 2000, seeking to recover punitive damages and damages for pain and suffering, mental anguish, humiliation, anxiety, depression, loss of earning capacity, and medical expenses. All defendants filed preliminary objections, which the trial court granted in part and denied in part. Specifically, the court dismissed: (1) Appellant's claim for punitive damages with respect to all defendants; (2) all claims of corporate negligence against Thomas Jefferson Hospital; and (3) various allegations of "outrageous conduct and reckless indifference" on the part of Appellees. Order of Court, 4/19/00, at 1. Appellant subsequently filed an amended complaint on May 9, 2000, wherein she alleged, *inter alia,* negligent and reckless conduct on the part of Dr. Golden, Dr. Golden's supervisors, and business entities affiliated with Methodist Hospital relating to the administration of the intravenous Ativan. Appellees filed an answer and new matter, and Appellant filed a response.[2]

¶ 5 On December 11, 2002, Dr. Golden filed a motion for summary judgment claiming that under the Medical Care Availability Reduction of Error Act ("MCARE Act"), 40 P.S. § 1303.512, Appellant's expert witness, Dr. Pogos Voskanian, was not qualified to render an opinion as to the applicable standard of care in this case because Dr. Voskanian was a psychiatrist, and the individual who prescribed the intravenous Ativan,

**2.** Drs. Pat A. Lannutti and Richard Pascucci, whose names do not appear in the caption, were dismissed from the action on March 5, 2001, when the trial court granted their motion for judgment on the pleadings. Dr. Joseph Mangel, whose name also does not appear in the caption, filed an affidavit of non-involvement and was dismissed from the case on July 17, 2002. Dr. Baldino filed an affidavit of non-involvement and was dismissed

from the case on July 25, 2002. Dr. Volpe was dismissed from the case on April 21, 2003, after the court granted his motion for summary judgment. Drs. Attanasio, Parenti, Simelaro, and Venditto were dismissed from the case by way of stipulation on July 18, 2003. None of these individuals is a party to the instant appeal, and Appellant does not argue that they were dismissed improperly.

Dr. Golden, practiced internal medicine. Thereafter, on January 6, 2003, Methodist Hospital and Thomas Jefferson Hospital filed a similar motion requesting summary judgment based on the same argument. The Honorable Gary S. Glazer denied both motions by order dated February 14, 2003.

¶ 6 As the parties prepared for trial, the case was assigned to the Honorable Sandra M. Moss, at which point Appellees filed motions *in limine* seeking to preclude Dr. Voskanian from testifying for the same reason articulated in their summary judgment motions, *i.e.*, that Dr. Voskanian was not qualified to testify regarding the standard of care because he did not practice internal medicine. On July 18, 2003, Judge Moss entered an order granting the motions and dismissing the action in its entirety. Appellant filed a motion for post-trial relief, which was denied.[3] This appeal followed.

¶ 7 Appellant raises three issues for our review:

1. When the trial judge hears motions *in limine* which are virtually identical in substance to motions for summary judgment which were previously denied [by] another judge of the same court, and takes no testimony nor anything which would indicate a change of the facts or circumstances, does the trial judge violate the coordinate jurisdiction rule by granting the motions *in limine* when the effect of granting the motions will be dismissal of the case?

2. Is a psychiatrist, [who is an] expert in the treatment of anxiety, qualified to provide an expert opinion on [a] violation of the standard of care by treating anxiety with intravenous Ativan, by an unsupervised resident not fully trained in any specialty?

3. Did the Court below err in relying on the provisions of the [sic] section 512 of the Medical Care Availability and Reduction of Error (Mcare) Act, which speaks to qualifications for expert witnesses presenting opinions against physicians, and not hospitals, when holding that [Appellant's] expert was not qualified to offer an opinion against defendant hospitals?

Appellant's brief at 11.[4]

¶ 8 With respect to her first argument, Appellant contends that Judge Moss violated the coordinate jurisdiction rule when she granted Appellees' motions *in limine* after Judge Glazer had denied Appellees' motions for summary judgment. Appellees counter that their motions *in limine* differed from the previously-denied motions and thus, no violation occurred.

---

3. For procedural purposes, the order granting Appellees' pretrial motions to preclude Dr. Voskanian's testimony constituted a grant of summary judgment; thus, Appellant should not have filed a post-trial motion. Pa.R.C.P. 227.1 n. 3 ("A motion for post-trial relief may not be filed to ... motions for judgment on the pleadings or for summary judgment ... or other proceedings which do not constitute a trial."); *accord DiGregorio v. Keystone Health Plan East*, 840 A.2d 361 (Pa.Super.2003). Indeed, the July 18, 2003 order became final and appealable at the moment it was entered. Pa.R.A.P. 341(b)(1) ("A final order is any order that ... disposes of all claims and of all parties ....."). However, despite the procedural misstep, we have jurisdiction to entertain this appeal because Appellant filed her notice of appeal within thirty days of the July 18, 2003 order. *See* Pa. R.A.P. 903(a) (notice of appeal shall be filed within thirty days after entry of order from which appeal is taken).

4. We have renumbered Appellant's issues for our convenience.

¶ 9 In *Ryan v. Berman*, 572 Pa. 156, 161, 813 A.2d 792, 795 (2002), our Supreme Court offered a detailed explanation of the coordinate jurisdiction rule:

> The salient case on the coordinate jurisdiction rule is *Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326 (1995). It states the rule as follows: "Judges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions." *Id.* 664 A.2d at 1331. "Departure ... is allowed only in exceptional circumstances such as where there has been an intervening change in the controlling law, a substantial change in the facts or evidence giving rise to the dispute in the matter, or where the prior holding was clearly erroneous and would create a manifest injustice if followed." *Id.* 664 A.2d at 1332. The rule serves "not only to promote the goal of judicial economy" but also "(1) to protect the settled expectations of the parties; (2) to insure uniformity of decisions; (3) to maintain consistency during the course of a single case; (4) to effectuate the proper and streamlined administration of justice; and (5) to bring litigation to an end." *Id.* 664 A.2d at 1331. It is manifest that a judge may not lightly overrule the prior decision of another judge of the same court. In some circumstances, however, application of the rule can "thwart the very purpose the rule was intended to serve, *i.e.*, that judicial economy and efficiency be maintained." *Salerno v. Philadelphia Newspapers, Inc.*, 377 Pa.Super. 83, 546 A.2d 1168, 1170 (Pa.Super.1988). Thus we said in *Starr* that departure from the rule of coordinate jurisdiction is allowed "where the prior holding was clearly erroneous and would create a manifest injustice if followed." 664 A.2d at 1332. Applying the rule of coordinate jurisdiction too rigidly, therefore, can undermine the purposes which justify the rule.

¶ 10 Additionally, the *Ryan* Court stated, "[W]here the motions differ in kind, as preliminary objections differ from ... motions for summary judgment, a judge ruling on a later motion is not precluded from granting relief although another judge has denied an earlier motion." *Id.* at 160, 813 A.2d at 794 (quoting *Goldey v. Trustees of University of Pennsylvania*, 544 Pa. 150, 155–56, 675 A.2d 264, 267 (1996)).

¶ 11 Based on our review of the record, we find that Judge Moss violated the coordinate jurisdiction rule. Despite Appellees' claims to the contrary, their motions for summary judgment and their motions *in limine* raised the same issue, *i.e.*, the applicability of the MCARE Act to Dr. Voskanian's putative testimony, and both sets of motions presented the same considerations for the judges who heard them.[5]

---

5. Thomas Jefferson Hospital posits that its motion *in limine* differed from its motion for summary judgment because it included one sentence alleging that Dr. Voskanian's expert report failed to establish "**how** the alleged failure to place [Appellant] on a cardiac monitor or the alleged failure of a nurse to take a critical care course **caused** [Appellant's] alleged injuries." Motion *in Limine*, 7/11/03, at ¶ 11 (emphasis in original) (footnote omitted). We find this argument unpersuasive. First, this isolated contention did little to change the overall nature of the motion *in limine*, the remainder of which challenged Dr. Voskanian's qualifications, which was the basis of the summary judgment motion. Second, as noted *supra*, all claims of corporate negligence against Thomas Jefferson Hospital were dismissed by way of preliminary objections; thus, assuming *arguendo* that Dr. Voskanian's expert report did not address a nurse's failure to take a critical care course, that fact is irrelevant. Third, the trial court disregarded the hospital's argument regarding the failure to place Appellant on a cardiac monitor during this incident, focusing instead on the hos-

Moreover, there is no indication that Judge Moss, who ruled on the motions *in limine* five months after Judge Glazer disposed of the motions for summary judgment, considered additional facts or evidence that had not been presented to Judge Glazer. Indeed, the record reveals that Appellees referred both judges to Dr. Voskanian's expert report and *curriculum vitae* in support of their argument that Dr. Voskanian should not be permitted to testify regarding the standard of care because he does not practice internal medicine.

¶ 12 Furthermore, Judge Moss's departure from the general prohibition against revisiting prior rulings cannot be sustained on the rationale that Judge Glazer's ruling was clearly erroneous. We begin our analysis with the relevant language contained in § 1303.512 of the MCARE Act, which reads:

§ 1303.512. Expert qualifications

(a) GENERAL RULE. No person shall be competent to offer an expert medical opinion in a medical professional liability action against a physician unless that person possesses sufficient education, training, knowledge and experience to provide credible, competent testimony and fulfills the additional qualifications set forth in this section as applicable.

(b) MEDICAL TESTIMONY. An expert testifying on a medical matter, including standard of care, risks and alternatives, causation and the nature and extent of the injury, must meet the following qualifications:

(1) Possess an unrestricted physician's license to practice medicine in any state or the District of Columbia.

(2) Be engaged in or retired within the previous five years from active clinical practice or teaching.

Provided, however, the court may waive the requirements of this subsection for an expert on a matter other than the standard of care if the court determines that the expert is otherwise competent to testify about medical or scientific issues by virtue of education, training or experience.

(c) STANDARD OF CARE. In addition to the requirements set forth in subsections (a) and (b), an expert testifying as to a physician's standard of care also must meet the following qualifications:

(1) Be substantially familiar with the applicable standard of care for the specific care at issue as of the time of the alleged breach of the standard of care.

(2) Practice in the same subspecialty as the defendant physician or in a subspecialty which has a substantially similar standard of care for the specific care at issue, except as provided in subsection (d) or (e).

(3) In the event the defendant physician is certified by an approved board, be board certified by the same or a similar approved board, except as provided in subsection (e).

(d) CARE OUTSIDE SPECIALTY. A court may waive the same subspecialty requirement for an expert testifying on the standard of care for the diagnosis or treatment of a condition if the court determines that:

pital's primary contention that Dr. Voskanian did not satisfy the requirements of the MCARE Act. However, since the trial court did not address the issue and we have deter-

mined that the case must be remanded, Thomas Jefferson Hospital is free to renew its objection to that aspect of Dr. Voskanian's expert report prior to trial.

(1) the expert is trained in the diagnosis or treatment of the condition, as applicable; and

(2) the defendant physician provided care for that condition and such care was not within the physician's specialty or competence.

(e) OTHERWISE ADEQUATE TRAINING, EXPERIENCE, AND KNOWLEDGE. A court may waive the same specialty and board certification requirements for an expert testifying as to a standard of care if the court determines that the expert possesses sufficient training, experience and knowledge to provide the testimony as a result of active involvement in or full-time teaching of medicine in the applicable subspecialty or a related field of medicine within the previous five-year time period.

40 P.S. § 1303.512.

¶ 13 Judge Moss excluded Dr. Voskanian's putative testimony based on the following rationale:

[Appellant] experienced serious breathing difficulties which caused her to become anxious. Said anxiety further aggravated her respiratory condition. Dr. Golden administered intravenous Ativan, a sedative commonly used for medically induced anxiety, to relax [Appellant] and encourage deep breathing. Defense counsel argued intravenous treatment was selected "to have the relaxing effect of the Ativan kick in a little bit faster, to relax [Appellant,]" and "to relieve the anxiety component that was making her breathing problem worse."

Said Ativan was specifically prescribed to treat a pulmonary problem, not a psychiatric one. Besides [prescribing] Ativan[,] Dr. Golden also increased [Appellant's] oxygen by ten

percent hoping the combination would relieve her "pulmonary crisis." Although Ativan is also a drug psychiatrists use in pill form to treat anxiety related mental illnesses, in this particular instance it was prescribed by an internist to treat a respiratory ailment. All of the care Dr. Golden provided including the intravenous Ativan was to treat breathing difficulties caused by [Appellant's] pulmonary distress.

[Appellant's] medical liability expert, Pogos Voskanian, M.D., is a psychiatrist. He is a medical doctor who specializes in mental health issues. Dr. Voskanian does not practice in the "same subspecialty" as Dr. Golden nor in a "subspecialty which has a substantially similar standard of care" as defined by Chapter 5 of the M–CARE Act. Further, Dr. Voskanian is not "certified by the same or a similar approved board" as Dr. Golden. Dr. Voskanian does not possess training or experience in internal medicine. Therefore[,] he is not qualified to opine on standards used by internists when prescribing medication for pulmonary problems.

Trial Court Opinion, 8/18/03, at 3–4 (citations to record omitted).

¶ 14 Appellant claims the trial court's reasoning is flawed because: (1) Dr. Golden prescribed the intravenous Ativan to curb Appellant's anxiety, not to treat a pulmonary problem; and (2) Dr. Voskanian received residency training in internal medicine, and he is familiar with the standard of care for the administration of Ativan, which is regularly prescribed by psychiatrists to treat anxiety. We agree with both contentions.

It is well established in this Commonwealth that the decision to admit or to exclude evidence, including expert testi-

mony, lies within the sound discretion of the trial court. *Turney Media Fuel, Inc. v. Toll Bros., Inc.,* 1999 PA Super 37, 725 A.2d 836, 839 (Pa.Super.1999). Moreover, "our standard of review is very narrow; we may only reverse upon a showing that the trial court clearly abused its discretion or committed an error of law. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Id.* (citation omitted).

*Ettinger v. Triangle–Pacific Corp.,* 799 A.2d 95, 110 (Pa.Super.2002).

■ ¶ 15 Contrary to Judge Moss's position, Dr. Golden did not prescribe the intravenous Ativan to treat a "respiratory ailment." *Id.* at 3. Indeed, according to Dr. Golden's pretrial memorandum, he prescribed the drug "for anxiety." Pretrial Memorandum of Dr. Golden, 1/24/03, at 1. Thus, as Appellant contends, Dr. Voskanian, who has prescribed Ativan on multiple occasions for individuals who suffer from anxiety, is "substantially familiar with the applicable standard of care at issue as of the time of the alleged breach of the standard of care." 40 P.S. § 1303.512(c)(1).

■ ¶ 16 Similarly, we disagree with the Judge Moss's determination that Dr. Voskanian is not qualified to testify as an expert in this case because he does not practice in the same subspecialty as Dr. Golden or in a subspecialty that has a substantially similar standard of care for the specific care at issue. First, as Appellant accurately points out, Dr. Golden was a resident when this incident occurred; therefore, he cannot be deemed a specialist in internal medicine or held to the standard of care of a specialist or a subspecial-

ist in these proceedings. *See Jistarri v. Nappi,* 378 Pa.Super. 583, 549 A.2d 210, 214 (1988) (affirming trial court's determination that a resident, a licensed physician receiving training in a particular specialty, cannot be held to the same degree of care as a specialist who has "completed the residency program and may also have had years of experience in the specialized field."). Furthermore, it is clear that the excluded testimony concerns the standard of care applicable to **any** physician who prescribes Ativan to treat anxiety. Thus, we reject Judge Moss's contention that Dr. Voskanian is unfit to render an opinion in this case simply because he practices psychiatry, especially where, as here, the defendant physician did not have a subspecialty when the alleged negligent act occurred. *Compare Herbert v. Parkview Hospital,* 854 A.2d 1285 (Pa.Super.2004) (expert witness, who was not board certified in nephrology, was qualified under MCARE Act to render opinion at trial of physician who committed malpractice during a nephrology consultation because both witness and physician were board certified in internal medicine, which encompassed specific care at issue).

■ ¶ 17 Finally, with respect to the board-certification requirement contained in 40 P.S. § 1303.512(c)(3), Dr. Golden concedes that he was **not** board-certified in internal medicine when this incident occurred. *See* Brief of Dr. Golden at 15. Therefore, the fact that Dr. Voskanian is not board-certified in internal medicine is irrelevant, and Judge Glazer's decision to deny Appellees' motions for summary judgment was proper.

¶ 18 We now turn to Appellant's final contention that the trial court erred in entering judgment in favor of Methodist Hospital and Thomas Jefferson Hospital

on the rationale that Dr. Voskanian did not meet the statutory requirements set forth in the MCARE Act.[6] Specifically, Appellant argues that the court should not have considered the MCARE Act when ruling on Appellant's ability to establish a *prima facie* case against the defendant hospitals because the Act applies only to physicians, not to hospitals. Thomas Jefferson Hospital counters that Appellant has waived this issue by failing to raise it at the hearing on Appellees' motions *in limine* or in post-trial motions. We conclude that the court erred in dismissing Appellant's claims against Methodist Hospital and Thomas Jefferson Hospital.

¶ 19 Contrary to Appellant's position, the trial court did not make an explicit finding that the MCARE Act applies to hospitals. The court implicitly ruled that Appellant could not maintain her claims against the hospital defendants, which sounded in *respondeat superior*, based on the court's conclusion that Dr. Voskanian was not qualified to testify that Dr. Golden, the alleged tortfeasor, breached the applicable standard of care. However, as we have determined that Dr. Voskanian is in fact qualified to testify, we agree with Appellant that the trial court erred in dismissing her claims against the defendant hospitals. Moreover, we reject Thomas Jefferson Hospital's argument that this issue is waived, as Appellant consistently has asserted that Dr. Voskanian's testimony was admissible to establish liability on the part of Dr. Golden and the defendant hospitals.

¶ 20 For the reasons stated herein, we vacate the order in question and remand the case for trial.

¶ 21 Order vacated. Case remanded. Jurisdiction relinquished.

6. We have resolved Appellant's second claim in addressing her first issue.