## Commonwealth v. Kohler

*William R. Toal III,* for Commonwealth.
*Erv D. McLain,* for defendant.

NILON, *J.,* March 12, 2009—

## BACKGROUND AND PROCEDURAL HISTORY

This is an appeal from the court's judgment of sentence imposed on November 12, 2008. The nature and history of the case are as follows:

On September 7, 2005, a criminal complaint was filed against Stephen Kohler (appellant). The appellant was charged with: simple assault,[1] recklessly endangering another person,[2] criminal mischief,[3] harassment,[4] disorderly conduct,[5] driving on roadways laned for traffic,[6] following too closely,[7] and reckless driving.[8]

On January 19, 2006, the defendant was arraigned and the case was assigned to the Honorable Robert C. Wright. On January 19, 2006, Erv D. McLain, Esquire, entered his appearance for the defendant and the case was scheduled for a pretrial conference on February 27, 2006. On that date, the defendant requested a trial date, which was granted and a jury trial was scheduled for March 27, 2006; however, the court was unable to hear the matter on that date due to a homicide trial in the matter of *Commonwealth v. Stanley,* 5974-04. The trial was then sched-

---

1. 18 P.S. §2701.
2. 18 P.S. §2705.
3. 18 P.S. §3304.
4. 18 P.S. §2709.
5. 18 P.S. §5503.
6. 75 P.S. §3309.
7. 75 P.S. §3310.
8. 75 P.S. §3736.

uled for April 24, 2006 before the Honorable Robert C. Wright. On April 24, 2006, a defense continuance was granted and the case was scheduled for May 30, 2006. On June 2, 2006, a criminal notice form was filed and the case was continued until July 10, 2006. On July 10, 2006, a criminal notice form was filed and the case was continued until August 7, 2006. On August 8, 2006, a criminal notice form was filed and the case was continued until October 2, 2006.

On October 2, 2006, a waiver of Rule 600 was filed and the case was continued until December 4, 2006. The defendant requested and was granted a continuance from December 4, 2006 until January 22, 2007. On January 29, 2007, the case was continued until March 19, 2007. On March 20, 2007, a criminal notice form was filed and the case was continued until May 7, 2007. On May 7, 2007, a criminal notice form was filed and the case was continued until July 23, 2007. Judge Wright was hospitalized on July 10, 2007 and was eventually relieved of his duties as a criminal trial judge on August 13, 2007. On August 15, 2007, this case was reassigned to the Honorable Joseph P. Cronin. On September 26, 2007, defendant filed a motion for dismissal pursuant to Rule 600. The Rule 600 motion hearing was held on October 26, 2007 and December 7, 2007. The matter was taken under advisement. On April 23, 2008, Judge Cronin issued a lengthy order with supporting findings of fact and conclusions of law denying appellant's Rule 600 motion.

Thereafter, Judge Cronin continued the case because the court was commencing trials in other matters. Judge Cronin became president judge on January 7, 2008. On

May 9, 2008, this case was transferred to the undersigned. A trial date was scheduled for May 27, 2008. On that date appellant requested a continuance until July 28, 2008. On that date, the court was conducting the trial of *Commonwealth v. Garber,* 1317-06 and the matter was continued until September 2, 2008. On September 2, 2008, appellant requested a continuance to September 10, 2008 and a jury trial commenced on that date.

On September 11, 2008, appellant was found guilty of the charges of criminal mischief (M-2) and reckless driving (S). Prior to sentencing appellant, this court ordered a pre-sentence investigation, as well as a psychological evaluation. On November 12, 2008, appellant was sentenced as follows: criminal mischief—18 months probation, and reckless driving—a $200 fine. On December 16, 2008, defendant filed a notice of appeal. Consequently, on December 18, 2008, this court directed appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant filed a concise statement raising the following issues for appellate review:

"(1) Your defendant was sentenced on November 12, 2008 after being found guilty by a jury of his peers in the above-captioned matter.

"(2) Your defendant appeals this honorable court's April 23, 2008 order and opinion denying and dismissing defendant's petition for relief pursuant to Pa.R.Crim.P. 600.

"(3) The April 23, 2008 order and opinion denying and dismissing defendant's Rule 600 petition was authored and entered by the Honorable Joseph P. Cronin Jr.

"(4) The docket entries and case activity which are in dispute relative to the Rule 600 contest occurred while the matter was assigned to the Honorable Robert C. Wright who has since been relieved of his duties with the Court of Common Pleas of Delaware County as of August 13, 2007.

"(5) In its April 23, 2008 opinion, the court properly made the following findings: [(a)-(j) are recitations from Judge Cronin's findings of fact].

"(6) The court erred in its opinion and order of April 23, 2008 denying and dismissing defendant's Rule 600 motion in the following particulars:

"(a) In failing to analyze the instant matter pursuant to the mandates of *Commonwealth v. Matis,* 551 Pa. 220, 228, 710 A.2d 12, 16 (1998) focusing on and failing to find that the Commonwealth did not exercise due diligence in the above-captioned matter;

"(b) In concluding that the 25-month delay (741 days) was presumptively prejudicial pursuant to *Commonwealth v. Africa,* 524 Pa. 118, 569 A.2d 920 (1990) but finding that defendant experienced no actual prejudice by the delay.

"(c) In failing to appropriately assess pursuant to *Commonwealth v. Kimbrough,* 872 A.2d 1244 (Pa. Super. 2005) the three considerations pursuant to which a finding of prejudice must be assessed in light of the interests the speedy trial rule was designed to protect. The three interests are: (1) the prevent oppressive pretrial incarceration [sic]; (2) to minimize anxiety and concerns of the accused; and (3) to limit the possibility that the defense will be impaired, including but not

limited to accurate recollection of witnesses at the time of trial.

"(7) Of the aforementioned indicia of prejudice, the consideration most potentially detrimental to defendant's case is the third consideration specifically that the defendant's defense could be impaired due to the passage of an inordinate amount of time.

"(8) The considerations under the third prong of the test for prejudice include a consideration of the ability of defendant to adequately prepare his case for trial given the recall of witnesses and their ability to 'accurately recall events of the past and distant past in light of loss of memory.' Significantly, as noted by the court in *Africa supra this is not always reflected in the record because what has been forgotten can rarely be shown.* (emphasis supplied)

"(9) The court erred in erroneously holding that defendant experienced no prejudice prior to his trial date when any such prejudice was not yet capable of being adduced until the actual time of trial and as held by the court in *Africa, supra,* such prejudice may exist but not manifest itself plainly in the record because because [sic] what has been forgotten obviously cannot be reflected in the record.

"(10) This honorable court erred in issuing its April 23, 2008 order denying and dismissing defendant's petition for relief pursuant to Pa.R.Crim.P. 600 without adequately and fairly considering the affects of the prejudice, both obvious and latent, to defendant based upon the delay which was shown on the record.

"(11) The court's April 23, 2008 order and opinion painstakingly details the facts of the case in 72 finds [sic]

of fact and 18 conclusions of law, however, the court in its final paragraph of its 13-page opinion summarily concludes without explanation or analysis that defendant 'did not suffer any actual prejudice.'

"(12) Based upon the foregoing facts and law it is respectfully submitted that this honorable court committed an abuse of discretion or error of law in denying and dismissing defendant's Rule 600 petition."

## LEGAL ANALYSIS

Appellant's sole issue for appeal rests with the denial of his Rule 600 motion. On September 26, 2007, defendant filed a motion for dismissal pursuant to Rule 600. On October 26, 2007 and December 12, 2007, a hearing on the Rule 600 motion was held before the Honorable Joseph P. Cronin. After a review of the evidence, testimony, argument presented at the hearing and the memoranda of law submitted by defense counsel, Judge Cronin denied appellant's Rule 600 motion on April 23, 2008. He issued contemporaneous findings of fact and conclusions of law that offer a complete basis upon which the appellate courts can conduct review. The order and the findings of fact and conclusions of law are hereby adopted by this court, incorporated by reference and made a part of this opinion. (See "exhibit A" attached.)

This court issues this opinion in order to satisfy the requirements of Pennsylvania Rule of Appellate Procedure 1925(a).

It is a well-recognized principle that "judges of coordinate jurisdiction sitting in the same court and in the same case should not overrule the decisions of each

other." *Okkerse v. Howe,* 521 Pa. 509, 516, 556 A.2d 827, 831 (1989). Once a trial judge has decided a matter the decision should remain undisturbed. *Golden v. Dion & Rosenau,* 410 Pa. Super. 506, 510, 600 A.2d 568, 570 (1991). Our Supreme Court held in *Zane v. Friends Hospital,* 575 Pa. 236, 243, 836 A.2d 25, 29 (2003) that "the coordinate jurisdiction rule commands that upon transfer of a matter between trial judges of coordinate jurisdiction, a transferee trial judge may not alter resolution of a legal question previously decided by a transferor trial judge." *Commonwealth v. Starr,* 541 Pa. 564, 574, 664 A.2d 1326, 1331 (1995); see also, *Riccio v. American Republic Insurance Co.,* 550 Pa. 254, 261, 705 A.2d 422, 425 (1997).

As a panel of the Pennsylvania Superior Court has cogently stated, the purpose of the rule prohibiting one trial judge from overruling a decision by another judge on the same court is to "ensure a degree of pretrial finality 'so that judicial economy and efficiency can be maintained.'" *Salerno v. Philadelphia Newspapers Inc.,* 377 Pa. Super. 83, 87, 546 A.2d 1168, 1170 (1988) (quoting *Commonwealth v. Eck,* 272 Pa. Super. 406, 409, 416 A.2d 520, 522 (1979)).

Moreover, this court not only employs the principles of the coordinate jurisdiction rule, but also adopts Judge Cronin's order because he properly determined that there was no basis for relief in the instant case. His order provides detailed factual findings outlining the chronology of events that led to the delay in the trial of this matter. Judge Cronin also properly applied the facts to the law and concluded that the defendant did not suffer any actual prejudice. For the reasons heretofore stated, this

court respectfully requests that Judge Cronin's well-reasoned order be affirmed.

## CONCLUSION

For the foregoing reasons, the trial court's judgment of sentence should be affirmed on appeal.

---

## EXHIBIT "A"

## ORDER

And now, to wit, April 23, 2008, upon consideration of the defendant's petition to dismiss filed pursuant to Pa.R.Crim.P. 600 and after hearings this court publishes the following:

### A. *Finding of Fact*

(1) The complaint date in the instant case was September 7, 2005. (N.T. 10/26/07, p. 5.)

(2) Defendant filed his motion to dismiss in the instant case on September 18, 2007. (N.T. 10/26/07, p. 5.)

(3) The first preliminary hearing for the instant case was continued from October 17, 2005 until November 21, 2005. (N.T. 10/26/07, p. 8.)

(4) The only reason given by the magisterial district judge for continuing the first preliminary hearing was "other". (N.T. 10/26/07, pp. 7, 8.)

(5) The defendant requested and was granted a continuance from April 24, 2006 until May 30, 2006. (N.T. 10/26/07, p. 13.)

(6) The defendant requested and was granted a continuance from December 4, 2006 until January 22, 2007. (N.T. 10/26/07, pp. 13, 14.)

(7) The defendant requested and was granted a continuance from October 2, 2006 until December 4, 2006. (N.T. 10/26/07, pp. 14, 15.)

(8) The defendant requested and was granted a continuance from July 23, 2007 until August 21, 2007. (N.T. 10/26/07, p. 15.)

(9) This court takes judicial notice from other Rule 600 motions involving Judge Robert C. Wright that Judge Wright was hospitalized on July 10, 2007 and was eventually relieved of his duties as a criminal trial judge on August 13, 2007; the undersigned was assigned Judge Robert C. Wright's criminal case inventory effective August 13, 2007; Judge Robert C. Wright had scheduled a murder jury trial to commence on August 14, 2007; the undersigned presided over said trial from August 14, 2007 until August 17, 2007; the undersigned was unavailable from August 20, 2007 until August 27, 2007 because of a prearranged family vacation.

(10) The Commonwealth called Ms. Jacqueline Goffney as their witness. (N.T. 10/26/07, p. 96.)

(11) Ms. Goffney was Judge Wright's law clerk for the relevant time periods herein. (N.T. 10/26/07, pp. 97, 98.)

(12) In preparation for the instant hearing Ms. Goffney reviewed Judge Wright's personal calendar, all relevant court lists, the defendant's court file, the case management system and the electronic recordings of relevant court proceedings. (N.T. 10/26/07, p. 98.)

(13) Ms. Goffney was completely familiar with how Judge Wright managed his courtroom and his case inventory. (N.T. 10/26/07, p. 98.)

(14) On a given trial week Judge Wright would conduct a call of the list on Monday. (N.T. 10/26/07, p. 99.)

(15) A case listed for trial during that week would be placed on two-hour call for that week only. (N.T. 10/26/07, p. 99.)

(16) On Tuesdays Judge Wright would hear his Gagnon II cases, female prisoners and any cases left from the Monday call of the list. (N.T. 10/26/07, p. 99.)

(17) When a case is placed on two-hour call it is assigned a back-up trial date and if the case is not called for trial during that week it automatically reverts to the back-up trial date for its next listing. (N.T. 10/26/07, p. 99.)

(18) Judge Wright would assign the back-up trial date and the back-up trial date would be the next available date consistent with his court calendar. (N.T. 10/26/07, pp. 99, 100.)

(19) Judge Wright's staff provided him with a list of future dates from which he would select a back-up trial date. (N.T. 10/26/07, p. 102.)

(20) Judge Wright had an inventory of approximately 450 open cases from 2005 through 2007. (N.T. 10/26/07, p. 103.)

(21) Each judge in the Delaware County Criminal Division would receive a monthly report indicating the number of open criminal cases in their inventory. (N.T. 10/26/07, p. 103.)

(22) Judge Wright commonly attached jury trials and pretrial motions. (N.T. 10/26/07, p. 103.)

(23) Judge Wright, at times, attached non-jury trials. (N.T. 10/26/07, p. 103.)

(24) Judge Wright attached trials and motions at his own discretion. (N.T. 10/26/07, p. 104.)

(25) Judge Wright exclusively decided when to commence and when to conclude court on a given day. (N.T. 10/26/07, p. 104.)

(26) The Commonwealth would commonly send either a memo or an e-mail to the judge about cases the Commonwealth considered as priority cases. (N.T. 10/26/07, p. 104.)

(27) If a case had between five and seven previous listings Judge Wright's staff designated the case as a priority case and highlighted the case in red ink on Judge Wright's trial list only. (N.T. 10/26/07 p. 104.)

(28) On the trial lists given to the district attorney, public defender and privately retained counsel, an "x" would appear next to the case and adjacent to the "x" would appear the number of previous listings (*i.e.,* "5 x"). (N.T. 10/26/07, p. 104.)

(29) Commonwealth exhibit 2 is an example of an e-mail sent to Judge Wright's chambers dated April 13, 2006 alerting Judge Wright to the Commonwealth's priority cases for the week commencing April 13, 2006. The instant case does not appear on Commonwealth exhibit 2. (N.T. 10/26/07, pp. 111, 112; see C-2.)

(30) Commonwealth exhibit 3 is an example of a weekly trial list for Judge Wright for the week of August

6, 2007. The instant case does not appear on Commonwealth exhibit 3. (N.T. 10/26/07, p. 114; see C-3.)

(31) The instant case was listed for trial for the week commencing May 30, 2006. It was not a priority case. (C-6.)

(32) During the week commencing May 30, 2006 Judge Wright had 77 cases on his trial list. Judge Wright took approximately 20 guilty pleas; handled seven Gagnon II hearings; conducted a sentencing hearing in the case *Commonwealth v. Barringer* 2481-05; a motion for bail pending appeal in the case *Commonwealth v. Marquez* 1680-05; and a petition for transfer of custody of currency in the case of *Commonwealth v. Slowe* 725-06. (C-6.)

(33) On May 31, 2006 Judge Wright opened court at 10 a.m. and closed court at 5:45 p.m.; on June 1, 2006 Judge Wright opened court at 9:47 a.m. and closed court at 4:36 p.m.; on June 2, 2006 Judge Wright opened court at 10:03 a.m. and closed court at 1:10 p.m.; and on June 3, 2006 Judge Wright opened court at 10:06 a.m. and closed court at 2:38 p.m. (C-6.)

(34) During the week commencing July 10, 2006 the instant case was listed for trial but it was not a priority case. (C-6.)

(35) During the week commencing July 10, 2006, the Commonwealth sent a list of four priority cases to Judge Wright's chambers: *Commonwealth v. Santos Benson* (jury trial) 4472-05 (eventually continued until August 27, 2006); *Commonwealth v. Vaughn Matthews* 6765-05 (case passed until Friday then passed until its next back-up trial date); *Commonwealth v. Kevin Maloney* 1506-05

(placed on two-hour call eventually passed until its back-up trial date of August 21, 2006); and *Commonwealth v. Brockenbrough* 2837-2006 and 4099-1999 (placed on two-hour call and eventually passed to its back-up trial date of August 21, 2006). (C-6.)

(36) During the week commencing July 10, 2006 Judge Wright had 76 cases on his trial list. (C-6.)

(37) During the week commencing July 10, 2006 Judge Wright took approximately 12 guilty pleas; conducted 11 Gagnon II hearings; conducted a status conference in the case of *Commonwealth v. Boston* 5657-05, a sentencing hearing in the case of *Commonwealth v. King* 7047-05; a petition for expungement in the case of *Commonwealth v. Koban* 4264-04 and a petition for nominal bail in the case of *Commonwealth v. Myers* 7884-05. (C-6.)

(38) During the week commencing July 10, 2006 Judge Wright had doctor's appointments at 12:45 and 4:15 on July 12, 2006. (C-6.)

(39) During the week commencing August 7, 2006 the instant case was listed for trial and was not given a priority status. (C-6.)

(40) During the week commencing August 7, 2006 Judge Wright had 71 cases on his trial list. (C-6.)

(41) During the week commencing August 7, 2006 Judge Wright took approximately 18 guilty pleas; conducted a sentencing hearing in the case of *Commonwealth v. McHenry* 6086-05; a hearing on a forfeiture petition in the case of *Commonwealth v. Schrinchrimini* 2836-05; a hearing on "motions" in the case of *Commonwealth v. Hinton* 7886-05 and 7887-05; delivered verdicts in *Commonwealth v. Dow* 5521-04 and 707-05; sentencing

hearings in *Commonwealth v. Lynch* 1462-06, 2327-06, 2328-06 and 2325-06; and Judge Wright began a suppression hearing in the case of *Commonwealth v. Jenkins* 7196-05 but continued the remainder of the hearing until October 2, 2006. (C-6.)

(42) During the week commencing September 25, 2006 the instant case was listed for trial but it was not given priority status. (C-6.)

(43) Judge Wright had scheduled and attached the jury trial of *Commonwealth v. Lilies* 5606-05 but that case was continued. (C-6.)

(44) During the week commencing September 25, 2006 Judge Wright had 105 cases on his trial list and he took approximately nine guilty pleas; conducted approximately seven Gagnon II hearings; conducted a hearing on "motions" in the case of *Commonwealth v. Limeburner* 975-05; a hearing on "motions" in *Commonwealth v. Reid* 6989-05; sentencing hearings in the cases of *Commonwealth v. Butler* 7179-05, 7183-05 and 7178-05; *Commonwealth v. Hernandez* 7687-05 and 8125-05; and *Commonwealth v. Madison* 956-06 and a reconsideration of sentence hearing in the case of *Commonwealth v. McCrae* 5267-04. (C-6.)

(45) During the week commencing January 22, 2007 the instant case was listed for trial and the case was assigned a priority status. (C-6.)

(46) During the week commencing January 22, 2007 Judge Wright had 87 cases on his weekly trial list. (C-6.)

(47) During the week commencing January 22, 2007 Judge Wright took approximately 15 guilty pleas; held

approximately 13 Gagnon II hearings; conducted hearings on a petition to return property in the case of *Commonwealth v. Brightwell* 2236-03; sentencing hearings in the cases of *Commonwealth v. Jacobs* 4640-05 and *Commonwealth v. Shore* 504-06; conducted a status conference in the case of *Commonwealth v. Davis* 2458-05; conducted a hearing on a motion to withdraw a guilty plea in the case of *Commonwealth v. Neal* 5733-06; conducted a suppression hearing the case of *Commonwealth v. Nazirides* 4711-06; conducted a hearing on a motion to reconsider a sentence in the case of *Commonwealth v. Wimes* 5394-05; conducted a hearing on a petition to return property in the case of *In re Annie Samuels* 1931-05; and conducted a hearing on a petition to revoke bail in the case of *Commonwealth v. Toy* 825-06. (C-6.)

(48) During the week commencing March 19, 2007 the instant case was listed for trial and it was assigned a priority status. (C-6.)

(49) During the week commencing March 19, 2007 Judge Wright had approximately 79 cases scheduled on his weekly trial list. (C-6.)

(50) During the week commencing March 19, 2006 Judge Wright conducted a hearing on a Rule 600 motion to dismiss in the case of *Commonwealth v. Santos Benson* 6064-06 and presided over a jury trial in the case of *Commonwealth v. Dominic Toy* 825-06 which commenced on Tuesday, March 20, 2007 and did not conclude until Friday, March 23, 2007. (C-6.)

(51) During the week commencing May 7, 2007 the instant case was listed for trial and it was assigned a priority status. (C-6.)

(52) During the week commencing May 7, 2007 Judge Wright had approximately 76 cases appearing on his weekly trial list. (C-6.)

(53) During the week commencing May 7, 2007 Judge Wright took approximately 17 guilty pleas; conducted eight Gagnon II hearings; conducted a non-jury trial in the case of *Commonwealth v. Durham* 5435-05 which began on Tuesday, May 8, 2007 and was continued until a later date on Friday, May 11, 2007 so that an unavailable witness could testify; and conducted hearings on petitions for early parole in the cases of *Commonwealth v. Flanagan* 2511-03 and *Commonwealth v. Fetko* 931-05. (C-6.)

(54) The instant case was not reached during the week commencing May 7, 2007 and was next listed for trial on its back-up trial date of July 23, 2007. (C-6.)

(55) Once the instant case was identified as a case with Rule 600 problems nothing was done to expedite the instant case to trial. (N.T. 10/26/07, pp. 136 and 139.)

(56) Judge Wright would not move a case forward from a back-up trial date to bring the case to trial. (N.T. 10/26/07, p. 139.)

(57) At times when Judge Wright would assign a back-up trial date at the time of putting a case on two-hour call a defendant or the Commonwealth would request an earlier date than Judge Wright's selected back-up date. Judge Wright would only honor the request for an earlier back-up trial date if the case would result in a non-trial disposition. (N.T. 10/26/07, p. 140.)

(58) Judge Wright never called for a jury on a Thursday or Friday. (N.T. 10/26/07, p. 141.)

(59) Both the district attorney and Judge Wright would call cases to trial in Judge Wright's courtroom. (N.T. 10/26/07, p. 147.)

(60) The defendant and the Commonwealth agreed that Commonwealth exhibit 6 represented a true list of dates when the instant case was listed before Judge Wright for trial and the occurrences in Judge Wright's courtroom that given week. (N.T. 10/26/07, pp. 154 and 155; see C-6.)

(61) The weekly trial list that was prepared by Judge Wright's staff for Judge Wright did not contain the dates of arrest for the various defendants appearing on the list. (N.T. 10/26/07, p. 247.)

(62) The weekly trial list that was prepared by Judge Wright's staff for Judge Wright did not contain the number of defense continuances previously granted in conjunction with a waiver of time. (N.T. 10/26/07, p. 247.)

(63) All four cases listed as priority cases by the Commonwealth for the week commencing April 18, 2006 were continued during the week of April 18, 2006 to later dates. (N.T. 10/26/07, pp. 210, 211; see C-2.)

(64) Commonwealth exhibit 2 contains no information dictating any of the cases' Rule 600 status. (N.T. 10/26/07, p. 248; see C-2.)

(65) Ms. Goffney admitted that she had no idea what factors the district attorney considered when the district attorney considered a case to be a priority case. (N.T. 10/26/07, p. 249.)

(66) When Ms. Goffney and Judge Wright's staff would develop the priority list for a given trial week they did not have or consider the Rule 600 status of the given

case they chose to label as a priority case. (N.T. 10/26/07, p. 250.)

(67) The Commonwealth was unable to present any evidence that it advised Judge Wright by e-mail or memo that the instant case was a priority case. (N.T. 10/26/07, pp. 250, 251 and 260.)

(68) A case would not be listed as a priority case on Judge Wright's weekly trial list until it had been listed at least five times and the time between listings would have been roughly 30 to 50 days. (N.T. 10/26/07, pp. 214 and 247.)

(69) The instant case first appeared as having priority status on Judge Wright's trial list for the week commencing January 22, 2007 and the instant case remained as a priority for every listing it was given up to July 23, 2007. (N.T. 10/26/07, p. 252.)

(70) Ms. Goffney was not aware of any request by the Commonwealth to have the instant case transferred to another criminal trial judge for trial. (N.T. 10/26/07, p. 254.)

(71) The instant case was listed for trial before Judge Wright on the weeks commencing May 30, 2006; July 10, 2006; August 7, 2006; September 25, 2006; January 22, 2007; March 9, 2007; and May 7, 2007 and during those entire seven trial weeks Judge Wright presided over one jury and one non-jury trial. (N.T. 10/26/07, pp. 254, 255.)

(72) When the instant case appeared on one of Judge Wright's trial lists no information was provided the judge concerning prior continuances granted to either the Commonwealth or the defendant. (N.T. 10/26/07, pp. 255, 256.)

### B. *Conclusions of Law*

(1) The mechanical run date in the instant case was September 7, 2006.

(2) This court can come to no conclusions meriting exclusion concerning the time period from October 17, 2005 until November 21, 2005 (first preliminary hearing listing) since the reason for the continuance was "other".

(3) Because the defendant requested and was granted a continuance on April 24, 2006 the adjusted run date in the instant case became October 13, 2006.

(4) Because the defendant requested and was granted a continuance on October 2, 2006 the adjusted run date in the instant case became December 15, 2006.

(5) Because the defendant requested and was granted a continuance from December 4, 2006 the adjusted run date in the instant case became February 2, 2007.

(6) Because the defendant requested and was granted a continuance on July 23, 2007 the adjusted run date in the instant case became March 3, 2007.

(7) This court concludes that the time period from July 10, 2007 until August 27, 2007 is excusable judicial delay making the adjusted run date in the instant case April 20, 2007.

(8) A two-step process is used to analyze alleged violations of Pennsylvania's speedy trial rule. *Commonwealth v. Africa,* 524 Pa. 118, 569 A.2d 920 (1990).

(9) Preliminarily the court must determine if the delay itself was sufficiently long to be presumptively prejudicial. *Commonwealth v. Africa, supra.*

(10) If the delay is determined to be presumptively prejudicial, a balancing test wherein four factors are considered: length of delay, reason for delay, defendant's assertion of the right to a speedy trial and any prejudice to the defendant arising from the delay. *Commonwealth v. Africa, supra.*

(11) In the instant case 741 days elapsed from the filing of the criminal complaint until the defendant filed his motion to dismiss and discharge on September 18, 2007.

(12) A delay of approximately 25 months is presumptively prejudicial. *Commonwealth v. Africa, supra; Commonwealth v. Pounds,* 490 Pa. 621, 417 A.2d 597 (1980).

(13) The length of delay in the instant case was 741 days.

(14) The reasons for delay were occasioned by four continuance requests by the defendant which were granted; one instance of excusable judicial delay; and most significantly a case and inventory management system employed by the court which was painfully inadequate.

(15) The first and only time that the defendant asserted his right to a speedy trial was the filing of the motion to dismiss and discharge on September 18, 2007.

(16) The fourth factor requires the demonstration of prejudice caused by the delay in trial. *Commonwealth v. Africa, supra.*

(17) Prejudice should be assessed in light of the interests of defendants which the speedy trial rule was de-

signed to protect. There are three interests: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Commonwealth v. Kimbrough,* 872 A.2d 1244 (Pa. Super. 2005).

(18) The defendant did not suffer any actual prejudice.

Wherefore, defendant's motion to dismiss and discharge filed pursuant to Pa.R.Crim.P. 600 is denied.

The court administrator of Delaware County is ordered to immediately assign this case to a judge in the criminal section for trial.